**FILED**

OCT - 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Timothy P. Toms
4312 Olley Lane
Fairfax, VA 22032          Plaintiff
(703) 503-2048
                vs.

CASE NUMBER  1:05CV01981

JUDGE: Paul L. Friedman

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 10/06/2005

Alan Hantman, Art McIntyre, Amita Poole,
Carrie Apostolou, Hector Suarez,
Richard Kashurba, Radu Raveica, and
Serena Coleman
U.S. Capitol Bldg.   Defendants
Washington, DC 20515

Jury Trial Demanded

JURY ACTION

## COMPLAINT

### Introductory Statement

1. Timothy Toms (Toms) is a highly skilled, exceptionally well qualified senior auditor (GS- 0511-13 step 5) employed by the federal government. Because he reported unlawful and, or, otherwise improper misconduct, procedures, and deficiencies, including criminal misconduct, occurring in various federal programs and functions at the United States Capitol in Washington DC, he was subjected to egregious retaliation by the defendants. Plaintiff alleges the defendants acted and conspired among themselves, and with others, to cause him injury. The gravaman of Mr. Toms' "Bivens" complaint is that he suffered unlawful retaliation for speaking out on matters of public concern. Mr. Toms was retaliated against

1

for the lawful exercise of his First Amendment rights to speak out as a public employee on matters of public concern free of retaliation therefore, while also suffering a deprivation of his Fourth Amendment rights, and he is right to procedural due process, in the form of what he believes was a pretextual and unlawful malicious prosecution for no just or proper reason. The Fourth Amendment violations in turn were used by the defendants Hantman and McIntye, in a false and unlawful way, to create grounds, i.e. an excuse, to dismiss the plaintiff, Timothy Toms, from his employment because he exposed and acted to end corruption of which Mr. Hantman and Mr. McIntye were aware, and for which they were and are, upon information and belief, in part, responsible. Mr. Toms was unlawfully dismissed from his employment in violation of his First, Fourth, and Fifth Amendment (procedural due process) rights. He also complains of due process violations (violations of both his substantive due process rights and of his procedural due process rights) because the defendants' actions were planned and totally arbitrary meeting the test laid down in *Sacramento, County of v. Lewis, 118 S. Ct. 1708 (1998)* and *Daniels v. Williams, 474 U.S. 327 (1986)*. Mr. Toms was dismissed unlawfully through the pretextual utilization by the defendants Suarez, McIntye and Hantman of a procedurally flawed and deficient hearing and appeals process that so mocks constitutional standards

2

that Congressman Newt Gingrich, when he was Speaker of the House, directed that the egregious procedural due process rights to which federal employees were subjected when he complained, must be corrected. It never was. The only reason the plaintiff has been made to suffer adverse employment actions and retaliation in violation of his federally guaranteed rights is because of the disclosures and complaints he has made of unlawful and otherwise improper activities and decisions made by the aforementioned defendants and others. This misconduct reached to the highest levels of the US government.

**Jurisdiction and Venue**

2. Jurisdiction is conferred on this court by 28 USC section 1331 and 28 USC section 1343(a) (3) and (4) and the remedial statute 42 USC section 1983(this is a "Bivens" complaint, *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics 403 U.S. 388 (1971)* ).

3. A jury trial is demanded.

4. Punitive damages are demanded because the defendant's misconduct was particularly egregious and were in intentional contravention of plaintiff's rights.

5. Venue is properly before the United States District Court for the District of Columbia because the parties and all of the events complained of

3

herein are common to the Capitol of the United States of America i.e. the District of Columbia.

### Rights Violated

6. The plaintiff has a First Amendment right to speak out on matters of public concern without suffering retaliation for the exercise of that right.

7. The plaintiff has a First Amendment right not to suffer retaliation for collecting information, conducting a lawful investigation in conformance with his duties and subsequently reporting evidence of official misconduct and unlawful activities to his superiors and others including the police.

8. Plaintiff has a right to be free of malicious prosecution's devoid of probable cause which are pursued for selective, vindictive and, or, for ulterior, or other unlawful purposes such as the retaliation he has and is experiencing at this time. Plaintiff also has a right to procedural due process and to be free of arbitrary and capricious government misconduct that is devoid of any laudable government purpose and is of such an egregious nature as to shock the conscience.

### Operative Facts

9. The defendants Poole and Apostolou, in carrying out the improper goals and purposes of United States Architect of the US Capitol Alan Hantman, violated plaintiff's First Amendment rights by, upon information

4

and belief, acting in staff roles to carry out a persistent effort to discredit, ridicule, and otherwise unlawfully cooperate with the other defendants above, (and others unnamed), to discourage, intimidate, and deter the plaintiff's exercise of what Mr. Toms perceived to be his duty and responsibility to report unlawful activity to higher authority. These defendants, with the other defendants, knowingly acted to harass and intimidate the plaintiff, to interfere with his adhering to the ethics of his profession, and they acted to prevent him from making known the pervasive public corruption he had uncovered. By going beyond the mere conducting and reporting of his lawful auditing and investigative activities, and by making a sincere attempt to report the fraud to Senator Durbin, upon information and belief, plaintiff believes the Senator was personally involved, as per the representations of his staff. The defendants Apostolou and Poole, motivated by plaintiff's actions, upon information and belief, decided to have him retaliated against, setting in motion a number of anti-personnel actions carried out by the defendants Hantman and McIntye. The underlying activity grew out of the unlawful activities in AOC's Office of Inspector General, and, in part, the unlawful activities carried out by defendants Poole and Apostolou. This request was communicated to the defendant Amita Poole (employed by the Architect of the Capitol Mr.

Hantman) by Carrie Apostolou (a federal employee in Senator Durbin's office). This unlawful misconduct was also reported, by the plaintiff, at a later date to the United States Capitol Police (USCP) (Mr. Hantman sits on the USCP Board). Mr. Toms also complained directly to the GAO (Richard Brown). Mr. Hantman, Mr. McIntyre, and Mr. Suarez were, and are, aware of these facts. These events occurred on or about October 6, 2002 up through the present. On or after October 2002 the defendants misbehaved in the following manner.

10. The defendant Alan Hantman(the Architect of the Capitol) by and with IG Art McIntye and Hector Suarez, violated plaintiff's First Amendment rights by acting unlawfully to transfer the plaintiff from his position, including a reassignment of his duties so that he could not do his job properly. Motivated by their desire to cover-up unlawful activities these defendants sought to obstruct and discredit plaintiff's auditing duties. They acted to constantly badger and harass the plaintiff because he did his job honestly and properly, and they also acted to deter him through intimidation, from seeking investigations of unlawful matters he uncovered in the performance of his duties. McIntye, Suarez, and Hantman retaliated with egregious anti-personnel actions against the plaintiff, among other things moving him out of his office. They sent him to a barely accessible trailer

with non-potable water because he reported unlawful practices, including fraud and other criminal activity in government contracting, to the GAO and the U. S. Capitol Police. Eventually, they falsely charged and prosecuted him and unlawfully terminated him. The defendant McIntye also caused plaintiff to be refused data needed to perform his duties on certain investigations so as to deceive higher authority. These actions endangered plaintiff's work product, his independent efficiency as an auditor, and thus reflected negatively on his professional credentials. Hantman, McIntye, and Suarez also threatened plaintiff with disciplinary measures and dismissal, and have now carried out their threats, simply because plaintiff insisted on performing his job in accordance with the professional standards with which qualified federal auditors such as plaintiff are required to comply. These events occurred continuously from on or about January 4, 2001 through the present becoming more pronounced in the fall of 2002 (October) through the present.

11. Amita Poole is the Chief of Staff of the "Architect of the Capitol" (AOC) a position currently held by the defendant Hantman. While the plaintiff worked in the Inspector General's office as an auditor, technically for Mr. McIntyre, Mr. Suarez was plaintiff's immediate supervisor. Poole openly threatened to retaliate against the plaintiff for what she considered to

be his "insolent behavior". By this Poole meant that plaintiff had the gall to report the pervasive corruption he had found himself to Senator Richard Durbin, as well as to other officials. Upon information and belief, Poole, and others in the AOC front office, including Mr. Hantman himself and the Chief Counsel there, engaged in a continuing pattern of harassment and retaliation against Mr. Toms from on or about January 4, 2001 up through the present-day. This harassment took the form of threats, dire changes in work conditions, demeaning reassignments and concerted efforts to embarrass the plaintiff in the eyes and his colleagues. The defendants intentionally sought to humiliate and intimidate Timothy Toms, in an effort to bring about the suppression of his work product including the unlawful obfuscation of his lawful investigations which revealed illegal activities by a number of federal officials and entities. Equally egregious was the defendants' practice of causing plaintiff's auditor work product to be altered, something which not only violates professional standards (Yellow Book Standards) but which was undertaken to mislead the Congress and other responsible entities. These defendants created an atmosphere of retribution and retaliation for those staff members who did not comply or conform to an officially imposed policy of cover-up and conspiracy to avoid the disclosure of unlawful practices, not only in the conduct of public projects involving

the expenditure of public funds, but even worse, in the corruption of auditing methodologies and recordkeeping designed to make government functions "transparent" and accountable to the public, in the public interest. "Transparency" in the conduct of government operations is a common demand made by the United States in our foreign relations. Quite frankly the defendants' standards on this issue are inferior to many Third World countries. The foregoing more specifically occurred from on or about October 2002 on through the present.

12. Carrie Apostolou, who worked during the times complained of as a staffer for Senator Durbin, knowingly participated with the defendant Poole to intimidate and injure the plaintiff and prevent his disclosure of public corruption. To this end Amita Poole and Carrie Apostolou, among other things, worked together unlawfully to destroy the plaintiff's credibility and undermine his professional credibility as well. Upon information and belief, Ms. Apostolou even interfered with plaintiff's communications, or attempted communications, to Senator Durbin, in her efforts to suppress the plaintiff's effort to speak out on matters of public corruption.

13. Richard Brown is employed by the GAO. On or about November 6, 2002 plaintiff met with Mr. Brown and an attorney for the GAO (named Shalito), after a referral from Liz Dawson who works as Majority Clerk of

9

the Subcommittee on Appropriations - Legislative Branch Operations, on the House Side, and went over the fastidiously detailed and extremely well documented evidence of the wrongdoing plaintiff had discovered, including plaintiff's efforts to disclose to Senator Durbin the criminal activity he had found. Mr. Brown suggested that plaintiff file a "referral" with the United States Capitol Police (USCP). Brown said that "we could resolve matters" and "keep them on the hill by taking this route".

14. Plaintiff personally delivered the referral package to Chief Howe of the USCP on November 14, 2002. In the weeks following this delivery, Mr. Thompson spent numerous hours being interviewed and providing details demonstrating the allegations in the "criminal referral" to USCP detectives Tonya Robinson and Nettie Watts

15. On November 20, 2002, on Mr. Hantman's orders, Mr. Toms turned over a courtesy copy of the criminal referral package to Mr. Gary Glovinsky, who is the AOC's Chief Financial Officer. This meeting was held in the Ford- House Office Building in room H2- 396. All discussions focused on the referral package. The meeting lasted four hours. Also in attendance was Valerie Olson then serving as the EEO Director for the AOC. She was in personal attendance for Mr. Hantman.

16. On December 2, 2002 plaintiff returned to work having been on vacation since November 26, 2002. On his desk was a memorandum from Mr. Hantman. Mr. Hantman directed Toms to report directly to the AOC's general counsel to be assigned a "Temporary Detail".

17. The following day when plaintiff returned to his office in the Capitol Building (room HT-12) to pick up his personal effects, papers, and e-mails he discovered that he had been locked out of his office. His superiors would not respond to his efforts to contact them. His computer was taken and the hard drive was tampered with making certain files and inaccessible while others were destroyed or missing. Since December 2002 the plaintiff has been totally excluded from doing vital or important work commensurate with his skill and ability.

18. On January 13, 2003 plaintiff learned that a computer technician had been ordered by the defendant Kashurba to "dissect" Mr. Toms' computer. A cursory investigation by Mr. Toms indicated that the defendant Richard Kashurba, who is believed to have recently retired, was at the times complained of in this complaint, the Director of Information Resources Management at the AOC. Mr. Kashurba and Mr. Hantman were very close personal friends. Plaintiff had learned through technicians in the IRM office that Mr. Kashurba's computer had frozen up due to having 18,000+

"cookies" from Internet pornographic sites(some possibly being child pornography) which he was apparently downloading for personal use. As this was occurring Mr. Kashurba and Mr. McIntye ordered Mr. Bob Case to dissect Mr. Toms' computer located inside the IG's office at the main capitol (HT-12). Detailed instructions were provided by Mr. McIntye himself. This "dissection" of plaintiff's computer was an unlawful act designed to destroy plaintiff's work papers and work product and destroy the evidence of criminal wrongdoing he had uncovered. This misconduct by plaintiffs superiors was clearly criminal and was against the interests of the United States in a civil context as well. This action was taken while Mr. Toms had been assigned by McIntye elsewhere and then was on vacation, in an effort to move him out of his office. These actions by the aforementioned defendants McIntye, Hantman, and Suarez also indicate the disparate application of discipline and support the plaintiff's allegations of substantive due process violations. Plaintiff's computer was only returned in April 2003 after the so-called "temporary detail" was finished.

19. Since that time virtually nothing has been done to investigate or respond to plaintiff's allegations by any of the defendants herein, by the AOC, Senator Durbin, the USCP, the GAO or any other agency or person with responsibility to investigate or respond.

20. On October 8, 2004 the plaintiff was accosted in his trailer by the defendant Serena Coleman. Coleman was purportedly upset because plaintiff wanted to keep a water cooler he had originally requested for use in the trailer, he being the only AOC employee who was not being moved at that time and there being no potable water available to him in the trailer. Leaving plaintiff behind was another act of retaliation, and needlessly taking the water cooler was another.

21. Upon information and belief, Coleman, knowing she had the support of her superiors who were openly hostile to the plaintiff and undermined him constantly, physically assaulted the plaintiff and then reported him to the USPC and more specifically to the defendant Ravieco.

22. The allegations made by Coleman not only failed to support sufficient probable cause to charge the plaintiff with assault, but in fact, supported an opposite conclusion sufficient to charge the defendant Coleman with assault. Upon information and belief Ravieco partook of information from operatives in the AOC's office in the decision to charge the plaintiff as a further act of retaliation.

23. The defendant Ravieco then charged the plaintiff with assault. At this time a number of potential additional defendants became involved in the

13

deprivation of the plaintiffs First and Fourth Amendment rights (namely Rebecca Tiscione and Richard A. McSeveny).

24. The US Attorney's Office for the District of Columbia declared that they would not prosecute the case because it lacked prosecutorial merit. The prosecutor's decision was followed by the actions of the Superior Court for the District of Columbia who has ordered that the plaintiff's arrest record be expunged.

25. In total disregard of the prosecutor's decision and recommendations, and in an unlawful violation of the plaintiff's rights, the defendants proceeded to harass and intimidate the plaintiff by pretextually charging him through their administrative powers and then proceeded to dismiss him from his job as an ultimate act of retaliation.

26. The process of conducting administrative hearings for employees like plaintiff are devoid of meaningful procedural due process safeguards. There is no appeal from the process, and the hearing officer (whose report is kept confidential by the OIC and not revealed to plaintiff) produced a report which plaintiff has never seen.

27. The actions of the defendants in pursuing administrative proceedings against the plaintiff to terminate him in blatant violation of any

14

evidence to support their actions was retaliatory and was meant to injure the plaintiff for the lawful exercise of his First Amendment rights.

28. During the process of charging the plaintiff, the defendants, particularly the defendant Ravieco, handcuffed the plaintiff, and chained him to a wall in the USCP police office against his will and in violation of his Fourth Amendment rights to be free of unlawful seizures and unlawful arrests.

Wherefore plaintiff demands judgment of all defendants jointly and severally for the deprivation of, and for conspiracy to deprive plaintiff of his federally guaranteed rights under the First Fourth and Fifth Amendments of the United States Constitution in this "Bivens" action together with damages for pain and suffering, humiliation and embarrassment, injuries to his professional standing and credentials, damages for lost promotional opportunities and wages in an amount yet to be determined together with fees, costs, attorney's fees, and such other relief as the court may deem appropriate.

Respectfully Submitted,

Timothy Toms
4312 Olley Lane
Fairfax, VA 22032-1839
703. 503. 2048

October 6, 2005