IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| TIMOTHY P. TOMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05-CV-01981 (PLF) |
| | ) | |
| ALAN HANTMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT APOSTOLOU'S MOTION TO DISMISS

Defendant Carolyn Apostolou, through counsel, hereby respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss Plaintiff's Complaint with prejudice as to all claims against her.

Plaintiff's claims against Defendant Apostolou should be dismissed for lack of jurisdiction because the Speech or Debate Clause bars suit against Defendant Apostolou for matters arising from her legislative activities.  Plaintiff's claims should also be dismissed because the allegations in the Complaint fail to state a claim against Defendant Apostolou on three grounds.  First, there is no *Bivens* remedy for the conduct plaintiff alleges against Defendant Apostolou.  Second, plaintiff's allegations fail to establish that Defendant Apostolou took any adverse employment actions against plaintiff that could constitute a violation of his First Amendment rights.  Third and finally, Defendant Apostolou is entitled to qualified immunity because plaintiff alleges no actions that she undertook that violated any of plaintiff's clearly established rights.

For all these reasons, which are explained more fully in the accompanying Memorandum of Points and Authorities in Support of Defendant Apostolou's Motion to Dismiss, all claims against Defendant Apostolou in Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
Tel: (202) 224-4435

June 22, 2006                          Counsel for Defendant Carolyn Apostolou

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
TIMOTHY P. TOMS,                         )
                                         )
            Plaintiff,                   )
                                         )
            v.                           )        No. 1:05-CV-01981 (PLF)
                                         )
ALAN HANTMAN, *et al.*,                  )
                                         )
            Defendants.                  )
_____)


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APOSTOLOU'S MOTION TO DISMISS


Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
Tel: (202) 224-4435

June 22, 2006                    Counsel for Defendant Carolyn Apostolou

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Introduction and Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      The Speech or Debate Clause Bars Plaintiff's Claim Against Defendant Apostolou . . . . 5

II.     Plaintiff's Complaint Fails to State a Claim upon Which Relief Can Be Granted
        Against Defendant Apostolou . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      There Is No *Bivens* Remedy Against Defendant Apostolou for the
                Conduct Alleged in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Plaintiff's Allegations Against Defendant Apostolou Do Not
                Constitute a Violation of His First Amendment Rights as a Matter
                of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.      Defendant Apostolou Is Entitled to Qualified Immunity . . . . . . . . . . . . . . . . . . 19

        CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Cases:**                                                                  *Page*

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blankenship v. McDonald*, 176 F.3d 1192 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brady v. Livingood*, 360 F. Supp.2d 94 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\* *Bush v. Lucas*, 462 U.S. 367 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Carlson v. Green*, 446 U.S. 14 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chappell v. Wallace*, 462 U.S. 296 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2[d] Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crawford-El v. Britton*, 523 U.S. 574 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Davis v. Passman*, 442 U.S. 228 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dombrowski v. Eastland*, 387 U.S. 82 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

\* *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . . . . . 6, 7, 8, 9

*Government of Virgin Islands v. Lee*, 775 F.2d 5l4 (3[d] Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 8, 9

\* *Gravel v. United States*, 408 U.S. 606 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Graves v. United States*, 961 F.Supp. 314, 321 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gregoire v. Biddle*, 177 F.2d 579 (2[d] Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Henthorn v. Department of the Navy*, 29 F.3d 682 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 10

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kalka v. Hawk*, 215 F.3d 90, 94 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Kowal v. MCI Communications Corp.,* 16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . 10

*Lee v. Hughes*, 145 F.3d 1272 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lombardi v. Small Business Admin.*, 889 F.2d 959 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 16

*Maljack Productions, Inc. v. Motion Picture Ass'n of America, Inc.*, 52 F.3d 373
    (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Malley v. Briggs*, 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McSurely v. McClellan*, 553 F.2d 1277 (D.C. Cir. 1976) (en banc),
    *cert. dismissed*, 438 U.S. 189 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . 7, 8

*Minpeco, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856 (D.C. Cir. 1988) . . . . . . . . . . . 7

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

* *Payne v. Meeks*, 200 F. Supp.2d 200 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Powell v. McCormack*, 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

* *Schweiker v. Chilicky*, 487 U.S. 412 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

* *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 17

*Tripp v. Department of Defense*, 173 F. Supp.2d 58 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Brewster*, 408 U.S. 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2[d] Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zimbelman v. Savage*, 228 F.3d 367 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Constitution, Statutes and Rule**:

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Congressional Accountability Act, Pub. L. No. 104-1, 109 Stat. 3 (1995)
    *codified at* 2 U.S.C. §§ 1301-1438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2 U.S.C. § 1301(3)(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2 U.S.C. § 1302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2 U.S.C. § 1302(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    2 U.S.C. §§ 1311-1351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2 U.S.C. §§ 1401-1416 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

GAO Human Capital Reform Act of 2004, Pub. L. 108-271, § 8, 118 Stat. 811 (2004) . . . . . . . 4

5 U.S.C. § 2302(b)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. chs. 83, 87, 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 12(b)(1) & (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Legislative Materials and Miscellaneous**:

H.R. 3963, 108th Cong. § 207 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

147 Cong. Rec. 685, 686-87 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

145 Cong. Rec. 1413, 1417 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Legislative Branch Appropriations for Fiscal Year 2006: Hearings on H.R. 2985*
    *Before the Subcommittee on the Legislative Branch of the Senate Committee on*
    *Appropriations*, 109th Cong., 1st Sess., S. Hrg. 109-154 (2005) . . . . . . . . . . . . . . . . . . 7-8

Standing Rules of the Senate, S. Doc. No. 107-1 (2002):
    Senate Rule XXV.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Senate Rule XXVI.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reinstein & Silverglate, *Legislative Privilege and the Separation of Powers*,
    86 Harv. L. Rev. 1113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
TIMOTHY P. TOMS,                              )
                                              )
            Plaintiff,                        )
                                              )
            v.                                )        No. 1:05-CV-01981 (PLF)
                                              )
ALAN HANTMAN, *et al.*,                       )
                                              )
            Defendants.                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT APOSTOLOU'S  MOTION TO DISMISS**

**INTRODUCTION AND SUMMARY**

Plaintiff Timothy P. Toms, a former employee of the Architect of the Capitol, brings this *Bivens* action against Architect of the Capitol Alan Hantman, five employees in the Architect's office, a U.S. Capitol Police officer, and Carolyn Apostolou, Clerk to the Subcommittee on the Legislative Branch of the Senate Committee on Appropriations.  Plaintiff asserts that he was subjected to harassment on the job and eventual dismissal from his employment with the Architect in retaliation for his reporting misconduct and unlawful activities in the Architect's office.  These allegedly retaliatory actions, plaintiff claims, violated his rights under the First Amendment.

While the gravamen of plaintiff's complaint is that he suffered adverse employment actions by employees in the Architect's office, he names Ms. Apostolou as a defendant – despite the fact that she is not employed by the Architect – apparently because she serves as Clerk of the Appropriations Subcommittee that oversees and appropriates the funds for the Architect's office.

Plaintiff's misguided attempt to raise a claim against Ms. Apostolou should be rejected on the face of the complaint as a matter of law because his claim against her is barred by the Speech or Debate Clause and because plaintiff's allegations fail to state a claim against her for First Amendment retaliation.

Ms. Apostolou is protected from plaintiff's suit by the Speech or Debate Clause because plaintiff's allegations against Ms. Apostolou involve matters arising out of her staff work in assisting the Subcommittee in overseeing and legislating on appropriations for the Legislative Branch. Accordingly, the Court is without jurisdiction to hear this claim.

In addition, plaintiff's claim against Ms. Apostolou is subject to dismissal because it fails to state a claim on three grounds. First, there is no *Bivens* remedy available against Ms. Apostolou based on plaintiff's allegations of First Amendment retaliation. Congress has established an intricate, comprehensive scheme governing employment in the Legislative Branch – providing certain rights and remedies (and not others) to congressional employees. It would be inappropriate to disrupt this system by grafting on to it a *Bivens* damages remedy for actions for which Congress chose not to provide a remedy. Accordingly, the Court should decline to recognize any *Bivens* remedy for plaintiff's allegations against Ms. Apostolou.

Second, even accepting plaintiff's allegations against Ms. Apostolou as true, those allegations are insufficient to state a claim against her for violating plaintiff's First Amendment rights. Plaintiff offers only one specific factual allegation against Ms. Apostolou, namely, that she interfered with his attempts to communicate with Senator Richard Durbin, who was chairman of the Subcommittee at the time. Such an allegation is insufficient to establish a claim for First Amendment employment retaliation. As an initial matter, Ms. Apostolou was not plaintiff's employer and had no authority or control over his employment. Hence, as a matter of law, she

2

could not have taken any retaliatory adverse employment action against him.  Furthermore, plaintiff's allegation that Ms. Apostolou worked together in a conspiracy with employees in the Architect's office to retaliate against him and to terminate his employment, without any specific factual allegations to support such an assertion, is nothing more than a vague and conclusory allegation that is insufficient to state a constitutional claim.

Third, Ms. Apostolou is protected from plaintiff's claim by qualified immunity.  Even if plaintiff's allegations against Ms. Apostolou described a violation of his constitutional rights (which they do not), it certainly cannot be shown that any of the alleged actions of Ms. Apostolou – which solely entail "interfering" with plaintiff's communication with Senator Durbin – violated any of plaintiff's "clearly established" rights.  Defendant Apostolou is therefore entitled to the protection of qualified immunity.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Timothy P. Toms was employed by the Architect of the Capitol as a senior auditor for the Inspector General of the Architect's office.  *See* Complaint ¶ 1 [hereinafter "Compl."].  Plaintiff asserts that in October 2002 his investigations and auditing into matters overseen by the Architect's office uncovered evidence of official misconduct and unlawful activities, *see id.* ¶¶ 1, 7, which he reported to his superiors but received no action from them. *See id.* ¶¶ 9, 19.  After receiving no action from his superiors, plaintiff attempted to report his evidence of misconduct and fraud to Senator Durbin, then-chairman of the Senate Appropriations Subcommittee on the Legislative Branch, but plaintiff alleges that Ms. Apostolou (clerk of the Subcommittee) "interfered with plaintiff's communications, or attempted communications, to

Senator Durbin." *See id.* ¶ 12.[1]  Plaintiff then contacted an employee of the General Accounting

Office (GAO)[2] regarding his allegations of misconduct in the Architect's office, *see id.* ¶ 13, and

also delivered a package of materials detailing his allegations of misconduct and fraud to the U.S.

Capitol Police. *See id.* ¶¶ 13-14.  Plaintiff asserts that "virtually nothing has been done to

investigate or respond to plaintiff's allegations" by any of the entities to whom he sent

information regarding misconduct in the Architect's office. *See id.* ¶ 19.

     Plaintiff alleges that because of his attempts to report the misconduct he uncovered, he

was subjected to various adverse employment actions, including: being harassed in the

workplace, being temporarily "detail[ed]" to a different position, being prevented from having

the necessary information and data to perform his job functions, and having his computer

tampered with and "dissected." *See id.* ¶¶ 9-11, 17-18.  All these actions were taken against him,

according to plaintiff, to prevent him from continuing his work and revealing the misconduct and

illegal activities he had uncovered. *See id.* ¶¶ 10-11, 18.

     Later, in October 2004, while plaintiff was situated in a temporary office, he alleges that

he was assaulted by a fellow employee (Defendant Serena Coleman), yet the U.S. Capitol Police

subsequently arrested him for this altercation. *See id.* ¶ 20.  He claims that the U.S. Attorney's

office declined to prosecute criminal charges against him. *See id.* ¶ 24.

     Plaintiff was subsequently dismissed from his job. *See id.* ¶ 25.  He pursued an

administrative appeal of his termination, but was unsuccessful. *See id.* ¶ 26.  Plaintiff claims that

---

[1]  Plaintiff does not allege whether his communications ultimately did reach Senator Durbin, although he does allege that Senator Durbin was "personally involved" in handling this matter.  Compl. ¶ 9.

[2]  GAO's name has since been changed to the Government Accountability Office.  *See* GAO Human Capital Reform Act of 2004, Pub. L. 108-271, § 8, 118 Stat. 811, 814 (2004).

the administrative hearing process was "devoid of meaningful procedural due process safeguards" to protect the employee. *See id.* ¶ 26.

Plaintiff filed this action in October 2005 asserting a *Bivens* claim against the defendants for violating his First Amendment rights. *See id.* ¶ 1. Plaintiff claims that the harassment and eventual dismissal from his job violated his First Amendment rights because these actions were allegedly taken in retaliation for his reporting evidence of misconduct in the Architect's office. Plaintiff also asserts *Bivens* claims for violation of his Fourth and Fifth Amendment rights against defendants other than Ms. Apostolou.[3]

## ARGUMENT

### I.    THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFF'S CLAIM AGAINST DEFENDANT APOSTOLOU

Because plaintiff's claim against Ms. Apostolou arises from her actions in assisting Subcommittee Members in carrying out their legislative duties, the Speech or Debate Clause of the Constitution provides her with immunity from plaintiff's suit. Therefore, plaintiff's claim against Ms. Apostolou should be dismissed under Rule 12(b)(1) for lack of jurisdiction as it is barred by the Speech or Debate Clause.[4]

---

[3]  Plaintiff asserts only a First Amendment retaliation claim against Defendant Apostolou. Plaintiff's Fourth Amendment claim arises from the circumstances of his arrest by a U.S. Capitol Police officer, *see* Compl. ¶ 28, and his Fifth Amendment claim arises from his allegation that the administrative procedures for appealing his termination were devoid of meaningful protections for the employee, *see id.* ¶ 26. In neither of those matters does plaintiff allege that Ms. Apostolou had any involvement.

[4]  Because the Clause immunizes Members of Congress and their staffs from both liability and the burdens of litigation, it erects a jurisdictional bar that should be resolved at the outset of the litigation. *See Davis v. Passman*, 442 U.S. 228, 236 n.11 (1979) ("Defenses based upon the Clause should thus ordinarily be given priority, since federal legislators should be exempted from litigation if their conduct is in fact protected by the Clause.").

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. l.  The Clause deprives courts of jurisdiction over civil actions seeking to question Members or their aides about their legislative activities.  It does so in order to effectuate the Clause's purpose "to insure that the legislative function the Constitution allocates to Congress may be performed independently."  *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975).  The Clause has been interpreted to bar private civil actions like this one, because "[j]ust as a criminal prosecution infringes upon the independence which the Clause is designed to preserve, a private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation."  *Id.* at 503.  Accordingly, as the Supreme Court has made clear, the immunity provided by the Clause serves not merely as "a defense on the merits[,] but also protects a legislator from the burden of defending himself."  *Powell v. McCormack*, 395 U.S. 486, 502-03 (1969); *see also Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam).

In determining the scope of the Clause's immunity, the Supreme Court has "read the Speech or Debate Clause broadly" in order to "effectuate its purposes."  *Eastland*, 421 U.S. at 501.  The Clause protects from civil liability all acts by Members of Congress that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see also Eastland*, 421 U.S. at 501 (immunity covers actions that "fall within the sphere of legitimate legislative activity").

6

Speech or Debate Clause immunity applies equally to congressional staff as to Members. In *Gravel*, the Supreme Court expressly held that in applying the Clause, a "Member and his aide are to be 'treated as one,'" 408 U.S. at 616 (citation omitted), explaining that "[w]e have little doubt that we are neither exceeding our judicial powers nor mistakenly construing the Constitution by holding that the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Id.* at 618.  Citing *Gravel*, lower courts have likewise recognized that congressional "aides may invoke the privilege to the extent that the Congressman may and does claim it." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983); *see also Minpeco, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856 (D.C. Cir. 1988) (quashing subpoenas to congressional staff).  Consequently, Ms. Apostolou is protected by the Clause to the extent her activities would be protected if done by a Member – in other words, to the extent that her actions were "within the sphere of legitimate legislative activity." *Eastland*, 421 U.S. at 501.

Plaintiff's complaint is largely bereft of any specific allegations regarding Ms. Apsotolou. His only specific allegation is that Ms. Apostolou interfered with his attempt to pass communications to Sen. Durbin, and that, in some completely unspecified way, she worked together with Architect employees to harass and terminate him.  Compl. ¶ 12.  These allegations involve matters arising from Ms. Apostolou's legislative duties as a clerk to the Appropriations Subcommittee on the Legislative Branch.   That Subcommittee has been assigned legislative and oversight responsibility for all appropriations for the operations of the Legislative Branch, Senate Rule XXV.1(b)(1), *reprinted in* Standing Rules of the Senate, S. Doc. No. 107-1 at 25 (2002), which includes the office and employees of the Architect of the Capitol.  *See, e.g.*, *Legislative Branch Appropriations for Fiscal Year 2006: Hearings on H.R. 2985 Before the Subcommittee*

7

*on the Legislative Branch of the Senate Committee on Appropriations*, 109th Cong., 1st Sess., S.

Hrg. 109-154, 71-120 (2005) (hearing on budget and programs of Architect of the Capitol).

Pursuant to its authority to "make investigations into any matter within its jurisdiction," Senate

Rule XXVI.1, *reprinted in* S. Doc. No. 107-1 at 39, the Subcommittee regularly seeks to inform

itself about the workings of the Architect of the Capitol and other Legislative Branch entities

whose funding is the responsibility of the Subcommittee. Such informing and oversight may

entail communications between Ms. Apostolou and the Architect's office.

The Supreme Court has explained that such oversight and information gathering are an

important and integral part of the legislative function. "A legislative body cannot legislate wisely

or effectively in the absence of information respecting the conditions which the legislation is

intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273

U.S. 135, 175 (1927)). The D.C. Circuit similarly has explained that information gathering,

whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed

deliberation over proposed legislation. . . . "The acquisition of knowledge through informal

sources is a necessary concomitant of legislative conduct and thus should be within the ambit of

the privilege so that congressmen are able to discharge their constitutional duties properly."

*McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976) (en banc) (quoting Reinstein &

Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv. L. Rev. 1113, 1154

(1973)), *cert. dismissed*, 438 U.S. 189 (1978). *Cf. also Government of Virgin Islands v. Lee*, 775

F.2d 514, 521 (3d Cir. 1985); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983)

(recognizing that the Clause protects informal fact-finding). Thus, as plaintiff's claim against

Ms. Apostolou arises from legislative activities she undertakes on behalf of the Subcommittee,

including oversight contacts with the Architect's office, the Speech or Debate Clause provides

her with immunity from plaintiff's claim.

Indeed, plaintiff's only allegation of any specificity against Ms. Apostolou – that she

"interfered with plaintiff's communications, or attempted communications, to Senator Durbin, in

her efforts to suppress the plaintiff's effort to speak out on matters of public corruption," Compl.

¶ 12 – involves actions that fall squarely within the protection of the Speech or Debate Clause.

Ms. Apostolou's decision on whether and how to pass on communications to the Senators whom

she serves as Subcommittee clerk are matters that are part of the legislative duties that Ms.

Apostolou performs for the Subcommittee, and thus cannot be subjected to suit.  That plaintiff

asserts that her handling of his communications to Senator Durbin was motivated by an improper

purpose – "to suppress the plaintiff's effort to speak out on matters of public corruption," Compl.

¶ 12 – is immaterial to the application of Speech or Debate immunity.  The Supreme Court has

made "clear that in determining the legitimacy of a congressional act we do not look to the

motives alleged to have prompted it. . . .  '[T]he Speech or Debate Clause protects against inquiry

into acts that occur in the regular course of the legislative process *and into the motivation for*

*those acts.*'"  *Eastland*, 421 U.S. at 508 (quoting *United States v. Brewster*, 408 U.S. 501, 525

(1972)); *accord Government of Virgin Islands v. Lee*, 775 F.2d at 522 ("manifestly legislative

acts" are privileged from suit without further inquiry).  Accordingly, once it is determined that

Ms. Apostolou's challenged conduct is within the "legitimate legislative sphere," the Speech or

Debate Clause is an absolute bar to interference, regardless of plaintiff's allegations of improper

motive.  *Eastland*, 421 U.S. at 503; *accord Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998)

(applicability of Speech or Debate Clause must be determined "stripped of all considerations of

intent and motive").  In sum, because plaintiff's claim against Ms. Aptosotlou arises from her

9

legislative duties as the Clerk for the Subcommittee, the Speech or Debate Clause requires its dismissal for lack of jurisdiction.

## II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST DEFENDANT APOSTOLOU

A complaint should be dismissed for failure to state a claim upon which relief can be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In considering such a motion, a court accepts as true all of the complaint's well-pleaded factual allegations, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and gives plaintiff "the benefit of all reasonable inferences from those facts." *Maljack Productions, Inc. v. Motion Picture Ass'n of America, Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995) (citing *Henthorn v. Department of the Navy*, 29 F.3d 682, 683-84 (D.C. Cir. 1994) and *Kowal*, 16 F.3d at 1276). However, the court does not "accept inferences drawn by [plaintiff] if they are unsupported by the alleged facts, nor . . . purely legal conclusions masquerading as factual allegations." *Maljack Productions*, 52 F.3d at 375 (citing *Kowal*, 16 F.3d at 1276). The defendants are entitled to judgment if there are no allegations in the complaint which, even if proven, would provide a basis for recovery. *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987). In this case, plaintiff's allegations against Ms. Apostolou fail to state a claim because (a) there is no *Bivens* remedy for the conduct alleged; (b) the Complaint's allegations do not constitute a violation of plaintiff's First Amendment right by Ms. Apostolou as a matter of law; and (c) Ms. Apostolou is protected from suit by the doctrine of qualified immunity.

10

A.    **There Is No *Bivens* Remedy Against Defendant Apostolou for the Conduct Alleged in the Complaint**

Plaintiff's suit seeks monetary damages from Ms. Apostolou based on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), where the Supreme Court held that courts, in certain circumstances, may imply a right of action directly under the Constitution for damages against federal officials for the violation of constitutional rights. The Supreme Court made clear in *Bivens*, however, that a damages remedy should be created only in those situations where there were no "special factors counselling hesitation." *Id.* at 396. Indeed, in its decisions since *Bivens*, the Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts," *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988), observing in 2001 that since *Carlson v. Green*, 446 U.S. 14 (1980), "we have consistently refused to extend *Bivens* liability to *any new context* or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (emphasis added). This Court should decline to create a new *Bivens* remedy for plaintiff's claim here.

In clarifying when it is appropriate to recognize a *Bivens* remedy, the Supreme Court has explained that, where Congress has established a comprehensive remedial scheme, courts must not lightly imply alternative *Bivens* relief. For example, in *Bush v. Lucas,* the Court refused to graft a *Bivens* remedy atop civil service laws, which it described as an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." 462 U.S. 367, 388 (1983). Similarly, in *Schweiker v. Chilicky*, 487 U.S. at 424-29, the Court declined to allow a *Bivens* action for wrongful denial of social security benefits, in light of the comprehensive nature of the Social Security system. The same result obtained in *Chappell v. Wallace*, 462 U.S. 296 (1983), where the armed forces' disciplinary structure

11

counseled against creating a *Bivens* remedy for military personnel whose constitutional rights were violated by superiors.  As the Supreme Court has made clear, where the statutory scheme is comprehensive, it is not for courts to "decide whether or not it would be good policy to permit [a *Bivens* constitutional tort action;]" rather, "we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating [such a remedy]."  *Bush*, 462 U.S. at 390; *see also Chilicky*, 487 U.S. at 426-27.

        In applying these *Bivens* precedents, this Circuit has concluded that "the judiciary should decline to exercise its discretion in favor of creating damages remedies against federal officials" in situations "where there is an 'explicit congressional declaration' that injured parties should be 'remitted to another remedy, equally effective in the view of Congress,' . . . or where there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Spagnola v. Mathis*, 859 F.2d 223, 226 (D.C. Cir. 1988) (en banc) (per curiam) (citations omitted).  In determining whether a particular statutory scheme qualifies as a "special factor" counseling against the creation of a *Bivens* remedy, "the [Supreme] Court [in *Chilicky*] made clear that it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention." *Id.* at 227 (citing *Chilicky*, 487 U.S. at 421-23).  Accordingly, this Circuit has interpreted the Supreme Court's precedents to require courts to "defer to Congress' judgment" and decline to create a *Bivens* remedy where (1) "the comprehensiveness of a statutory scheme cannot be gainsaid," and (2) "it appears that 'congressional inaction [in providing for damages remedies] has not been inadvertent." *Id.* at 227-28 (quoting *Chilicky*, 487 U.S. at 423) (alterations in original).  As both of these criteria are met here, this Court must decline to create a *Bivens* remedy for plaintiff's claim against Ms. Apostolou.

12

The Congressional Accountability Act ("CAA"), Pub. L. No. 104-1, 109 Stat. 3 (1995), *codified at* 2 U.S.C. §§ 1301-1438, in conjunction with the Civil Service Reform Act ("CSRA"), establishes a comprehensive scheme governing the employment rights of Legislative Branch employees such as plaintiff. As an employee of the Architect of the Capitol, plaintiff received certain employment benefits from the CSRA, including retirement benefits, health benefits, and automatic insurance coverage. *See generally* 5 U.S.C. chs. 83, 87, 89. In enacting the CAA in 1995, Congress augmented this coverage and provided for a comprehensive scheme governing employment in the Legislative Branch, including employment with the Architect of the Capitol, *see* 2 U.S.C. § 1301(3)(F). The CAA applied eleven federal employment statutes to the Legislative Branch, and created administrative and judicial remedies for vindicating the rights provided by those statutes. *See* 2 U.S.C. § 1302 (listing eleven employment laws made applicable to Legislative Branch); *id.* §§ 1311-1351 (applying protections of federal employment laws to legislative employees); *id.* §§ 1401-1416 (establishing administrative and judicial dispute-resolution procedures). Hence, in the CAA, as it augments the CSRA, Congress established a complete, comprehensive, and intricate statutory scheme governing its employees, and has provided for the exclusive rights and remedies that it deems appropriate and congruent with employment in the Legislative Branch.[5]

---

[5] That the CAA and CSRA may not provide employees of the Architect with a cause of action to challenge their termination on First Amendment retaliation grounds does not undermine the comprehensive nature of the scheme Congress has established. As the D.C. Circuit explained, the Supreme Court in *Chilicky* "made clear that it is the comprehensiveness of the statutory scheme involved, *not the 'adequacy' of specific remedies extended thereunder*, that counsels judicial abstention." *Spagnola*, 859 F.2d at 227 (emphasis added) (citing *Chilicky*, 487 U.S. at 421-23). *See also Chilicky*, 487 U.S. at 421-22 ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."), & at 425 (noting that, as in

(continued...)

13

Accordingly, as the CAA and CSRA establish a comprehensive scheme governing employment in the Legislative Branch, the Court should not even consider a *Bivens* remedy unless "it appears that 'congressional inaction [in providing for damages remedies] has not been inadvertent.'" *Spagnola*, 889 F.2d at 227-28 (quoting *Chilicky*, 487 U.S. at 423) (alterations in original). In this case, the lack of a remedy under the CAA and CSRA for the claim plaintiff asserts was not inadvertent. The Congress enacted the CAA as the culmination of many years of debate over whether and which employment rights and remedies to provide to Legislative Branch employees, including consideration of the existing laws governing federal employment. *See Payne v. Meeks*, 200 F. Supp.2d 200, 206 (E.D.N.Y. 2002) ("Because Congress enacted the CAA against the background of the CSRA, its withholding from congressional employees of a remedy for constitutional violations cannot have been inadvertent."). Furthermore, in biennial reports in 1998, 2000, 2002, and 2004 submitted to the House and Senate pursuant to section 102(b) of the CAA, 2 U.S.C. § 1302(b), discussing what additional Federal laws should be applied to legislative employees, the Office of Compliance (which administers the CAA) has recommended that the CAA be amended to extend to Legislative Branch employees the provisions of the CSRA governing employment protections for whistleblowers, 5 U.S.C. § 2302(b)(8). *See, e.g.*, 147 Cong. Rec. 685, 686-87 (2001); 145 Cong. Rec. 1413, 1417 (1999). Indeed, in 2004, a bill was introduced in the House of Representatives to amend the CAA to extend those protections and remedies to Legislative Branch employees, *see* H.R. 3963, 108th Cong. § 207 (2004). No action has been taken by Congress to provide such whistleblower protections. Hence, given the

---

[5](...continued)
*Bush*, Congress had not provided in the statutory scheme for "complete relief," but nevertheless refusing to create a *Bivens* remedy).

legislative history in enacting the CAA and the subsequent reports regarding the coverage and protections not provided for in that statute, it cannot be seriously claimed that the lack of a specific remedy within the CAA and CSRA scheme for plaintiff's claim raised here resulted from inadvertence on Congress' part.

Accordingly, as the CAA and CSRA provide a comprehensive scheme governing legislative employment and as the failure to provide a specific remedy for the claim plaintiff raises cannot be considered inadvertent, the Supreme Court's decisions in *Bush* and *Chilicky*, as interpreted by the D.C. Circuit in *Spagnola*, require this Court to reject plaintiff's *Bivens* claim against Ms. Apostolou.  This was the very conclusion reached in *Payne v. Meeks*, 200 F. Supp.2d 200 (E.D.N.Y. 2002), where the court rejected the same type of *Bivens* claim that plaintiff seeks to raise in this action.  In *Payne*, an employee of a Congressman alleged that she was harassed and eventually fired from her position because she had filed a lawsuit against a business owned by a campaign supporter and fund raiser for the Congressman.  *See Meeks*, 200 F. Supp.2d at 201-02.  The employee brought a *Bivens* action against the Congressman arguing that the harassment she received on her job and her eventual termination from that job constituted retaliation in violation of her First Amendment rights.  *See id.*  The court dismissed that claim, holding that the CAA and the CSRA created a comprehensive scheme governing legislative branch employment, and that therefore no *Bivens* remedy should be created by the courts.  *See id.* at 204-06.  The court found that the CAA was a comprehensive remedial scheme even though that statute did not provide the congressional employee with a remedy for personnel actions allegedly taken in violation of the employee's constitutional rights, *see id.* at 205-06, and the court also found that Congress' failure to provide such a remedy under the CAA was not inadvertent.  *See id.*

15

Other courts have likewise refused to recognize *Bivens* remedies for adverse employment actions allegedly infringing on constitutional rights in circumstances where the employee did not have a remedy under the CSRA.  In *Blankenship v. McDonald*, 176 F.3d 1192, 1194-95 (9th Cir. 1999), a federal judicial employee brought a *Bivens* claim against judicial officers alleging that she was terminated in violation of her First and Fifth Amendment rights.  The Ninth Circuit rejected plaintiff's claim, holding that "the CSRA precludes a *Bivens* remedy in this case," even though the court expressly recognized that the CSRA provided an appointed judicial employee such as the plaintiff in that case with no review for adverse personnel decisions.  *Id.* at 1195. Similarly, in *Zimbelman v. Savage*, 228 F.3d 367 (4th Cir. 2000), the Fourth Circuit found that no *Bivens* claim could be brought by two federal employees of a non-appropriated fund instrumentality (NAFI), because the CSRA was a comprehensive scheme governing federal employment, despite the fact that, as the court recognized, NAFI employees such as the plaintiffs in that case were not covered by the CSRA remedial process.  *See* 228 F.3d at 370 ("The fact that [plaintiffs] were NAFI employees and thus exempted by Congress from the Civil Service Reform Act does not release them from its exclusive remedial framework.").  *See also Lombardi v. Small Business Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) ("The recent Supreme Court cases of *Fausto* . . . and *Chilicky* . . . indicate that the Court will not create a *Bivens* remedy in a Federal employment action even if no remedy at all has been provided by the CSRA."); *Lee v. Hughes*, 145 F.3d 1272, 1275-76 (11th Cir. 1998).

In sum, this Court should follow the reasoning of *Payne* and these other cases and reject plaintiff's attempt to create a *Bivens* remedy for the First Amendment retaliation claim asserted in his complaint.  Congress having made a considered legislative decision regarding what statutory remedies to provide Legislative Branch employees, the Court should "defer to

16

Congress' judgment" and decline judicially to augment that statutory scheme by creating a

*Bivens* remedy.  *See Spagnola*, 889 F.2d at 228.

### B.    Plaintiff's Allegations Against Defendant Apostolou Do Not Constitute a Violation of His First Amendment Rights as a Matter of Law

Even if plaintiff could raise a *Bivens* cause of action under the First Amendment against

Ms. Apostolou, the allegations in his complaint fail to state a claim for a violation of his First

Amendment rights as a matter of law.  First, any claim against a defendant for taking an adverse

employment action in retaliation for plaintiff's First Amendment activity requires, as an initial

matter, that the defendant in fact be the party that took the adverse action.  Plaintiff Toms was an

employee of the Architect of the Capitol when he allegedly was harassed and ultimately

terminated by superiors in the Architect's office.  Ms. Apostolou, however, does not work in the

Architect's office; she is the clerk for the Subcommittee on the Legislative Branch of the Senate

Committee on Appropriations.  She exercises no authority in hiring, firing, or otherwise

controlling the assignment of employees in the Architect's office.  Not surprisingly, plaintiff's

complaint makes no allegations that Ms. Apostolou exercises such authority or that she took any

direct, adverse employment actions against him.  Consequently, as a matter of law, plaintiff's

allegations fail to state a claim against Ms. Apostolou for violating his First Amendment rights

through retaliatory adverse employment actions.  *See Shehee v. Luttrell*, 199 F.3d 295, 301 (6th

Cir. 1999) (rejecting as defective plaintiff's claim of First Amendment retaliation against two

defendants, stating that "[d]espite [plaintiff's] contention that [defendant] Fleming and

[defendant] Morgan instigated his firing, these men did not have the ability to terminate

[plaintiff] from his commissary position.  For this reason, [plaintiff] simply does not set forth a

valid First Amendment retaliation claim against Fleming or Morgan.").

17

Plaintiff's bald allegation that Ms. Apostolou "worked together" with defendants in the Architect's office to have plaintiff retaliated against and terminated, Compl. ¶ 12 – in other words, that Ms. Apostolou was part of a "conspiracy" to violate his constitutional rights, Compl. at 16 – is insufficient to state a claim. "A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss." *Brady v. Livingood*, 360 F.Supp.2d 94, 104 (D.D.C. 2004); *see also Graves v. United States*, 961 F.Supp. 314, 321 (D.D.C. 1997) (dismissing conspiracy claim where plaintiff failed "to allege (beyond conclusory assertions)" an agreement to violate plaintiff's rights); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2$^d$ Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations, internal quotation marks, and internal alterations omitted); *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 71 (2$^d$ Cir. 1999) (finding that plaintiff's allegations of Congressman's "'participation' in a 'conspiracy'" were "conclusory, and . . . for that reason insufficient to state a claim"). Plaintiff's complaint is bereft of any specific allegation which could possibly support a claim that Ms. Apostolou participated in a conspiracy to violate his rights. Plaintiff's sole allegation against Ms. Apostolou of any specificity, that she "interfered with plaintiff's communications, or attempted communications, to Senator Durbin," Compl. ¶ 12, fails to demonstrate any agreement between Ms. Apostolou and any other defendants to take adverse employment actions against plaintiff as part of a conspiracy to violate his constitutional rights. Accordingly, plaintiff's allegations fail to state a claim against Ms. Apostolou for a violation of his First Amendment rights.

18

**C.    Defendant Apostolou Is Entitled to Qualified Immunity**

Even were the Court to find that plaintiff's allegations stated a claim against Ms.

Apostolou, qualified immunity would still require dismissal of that claim.  All government

officials, including Members of Congress and their employees[6], are entitled to qualified

immunity if their challenged conduct "[did] not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *Kalka v. Hawk,* 215 F.3d 90, 94 (D.C. Cir. 2000) ("Qualified

immunity shields officials from liability for damages so long as their actions were objectively

reasonable, as measured in light of the legal rules that were 'clearly established' at the time of

their actions.").  This doctrine responds to the Supreme Court's recognition that lawsuits seeking

damage awards against government officials inflict substantial costs upon "society as a whole,"

including "the expenses of litigation, the diversion of official energy from pressing public

issues, . . . the deterrence of able citizens from acceptance of public office," and "the danger that

fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible

[public officials], in the unflinching discharge of their duties.'"  *Harlow*, 457 U.S. at 814

(quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2[d] Cir. 1949) (L. Hand, J.)).  The doctrine's

"clearly established violation" standard is therefore meant to "provide[] ample protection to all

but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S.

335, 341 (1986).

Because qualified immunity "is an immunity from suit rather than a mere defense to

liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted); *see also Kalka*, 215

---

[6]  "Members of Congress may assert the same qualified immunity available to executive
officials."  *Walker v. Jones*, 733 F.2d 923, 932 (D.C. Cir. 1984).

F.3d at 94 ("The immunity is not simply from damages but from having to participate in the proceedings."), it is important to recognize the immunity, where it applies, at the outset of a case. Indeed, "the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Tripp v. Department of Defense*, 173 F. Supp.2d 58, 61 (D.D.C. 2001) (Sullivan, J.) (citing cases); *see also Kalka*, 215 F.3d at 94 ("The Supreme Court has . . . instructed the lower courts that the validity of a qualified immunity defense should be determined as early as possible, preferably before discovery and trial.").

In evaluating whether a defendant is entitled to qualified immunity, the court first determines whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established." *Id.*; *see also Tripp*, 173 F. Supp.2d at 61. In assessing whether a right was "clearly established," the Supreme Court has explained, "[e]ven when the general rule has long been clearly established (for instance, the First Amendment bars retaliation for protected speech)," *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998),

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [T]he unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed in section II.B, *supra*, plaintiff's factual allegations do not demonstrate a violation of plaintiff's First Amendment rights by Ms. Apostolou, and hence, she is entitled to qualified immunity. However, even if the Court found that the allegations stated such a

violation, it certainly cannot be claimed that any such right was "clearly established" at the time

Ms. Apostolou engaged in any legislative activities involving the Architect's office or when she

allegedly interfered with plaintiff's attempted communications to Senator Durbin. A "reasonable

official" could not understand that such routine legislative staff practices violated plaintiff's

clearly established rights. Accordingly, Ms. Apostolou is protected by qualified immunity from

plaintiff's claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all claims against

Defendant Apostolou asserted in Plaintiff's Complaint.

Respectfully submitted,

PATRICIA MACK BRYAN, Bar #335463
Senate Legal Counsel

MORGAN J. FRANKEL, Bar #342022
Deputy Senate Legal Counsel

GRANT R. VINIK, Bar #459848
Assistant Senate Legal Counsel

THOMAS E. CABALLERO
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
Tel: (202) 224-4435

June 22, 2006                    Counsel for Defendant Carolyn Apostolou

21