RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

2006 JUL -6  PM 10: 07

FILING DEPOSITORY

## In the United States District Court
## For the District of Columbia

| | |
|---|---|
| Timothy P. Toms<br><br>plaintiff<br><br>V<br><br>Alan Hantman, et al.,<br><br>defendants | )<br>)<br>)<br>)<br>)<br>)  N0. 1:05-CV-01981(PLF)<br>)<br>)  Jury Trial Demanded<br>)<br>)  ( Hon.  Paul L. Friedman)<br>)<br>)<br>) |

**Plaintiff's Brief in Opposition to Defendant
Apostalou's Motion to Dismiss**

Introduction and Summary

The plaintiff, Timothy P. Toms, was a Congressional legislative

employee who at the times complained worked as a senior auditor for the

Architect of the Capitol.  He was not a federal civil servant nor was he

governed by the act.  As fastidiously outlined in the Complaint, Mr. Toms

discovered and documented pervasive corruption committed by certain

defendants and by others. For the sake of this brief, the salient legal issues are confined to whether or not Mr. Toms made out a complaint against the defendant Apostalou .

Mr. Toms, proceeding "pro se", alleges in a nutshell that he attempted, as a citizen, with a strong sense of moral and ethical responsibility, to report the extensive corruption he found to US Senator Durbin, the GAO, the Majority Clerk of the Subcommittee on Appropriations- Legislative Branch Operations (U.S. House) and upon advice of officials at the GAO, to the U.S. Capitol police (USCP) after reports to his superiors failed. See Complaint paragraphs 1, 9-12. Toms says Apostalou worked along side others, like the defendant Amita Poole, to deter and intimidate him, and even acted to physically prevent his communication of pervasive corruption to Senator Durbin, who according to Apostalou, declined to even provide the plaintiff Toms with an opportunity to present his case to the Senator or his staff despite Toms' clear and irrefutable evidence backed by extensive documentation of the wrongdoing.

Apostalou has put together an impressive brief with an almost endless list of citations. But much of what is argued is almost embellished, in a legal sense, not a factual sense of course. The key material issues raised by the defendant are issues of immunity, whether it be qualified immunity

based upon the progeny of *Harlow V. Fitzgerald, 457 U.S. 800 (1982)* or the Speech or Debate Clause, based primarily upon *Eastland V. United States Serviceman's Fund, 421 U.S. 491 (1975)*. The defendant also raises two related issues. One is a purported lack of jurisdiction under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, and    *Bush v. Lucas, 462 U.S. 367(1983)*, which stands for the proposition (at least in this case) that our courts should be very careful about granting any *Bivens* type of relief unless Congress has specifically spoken to that issue as it did in the case of civil service employees therein.

### Argument

#### Speech or Debate Clause Issues and/or, Qualified Immunity

Plaintiff argues that the defendant's Speech or Debate Clause argument is inapposite to the facts in this case. As correctly recognized in the *Eastland* case, and as profusely pointed out by Apostalou any Member of Congress is free to speak and act without concern over what is said by that Member when engaged in the legislative process. In *Eastland*, the High Court, at page 503, spoke as follows "We reaffirm that once it is determined that Members are acting within the "legitimate legislative shere " the Speech or Debate Clause is an absolute bar to interference."  citing to *Doe v.*

*McMillan 412 U.S. 306 at 314*. The crucial failure in this effort by the
defendant Apostalou to escape liability under the "Clause" can be found in
the failure of the defendant to find any support for the proposition that
Apostalou was engaged in any type of "legislative act" while she thwarted
Citizen Toms' efforts to act and speak against public corruption. See *Doe* at
pages 313- 316. Further, its obvious under *Doe* that "legislative
functionaries", of which Apostalou is obviously one, is not entitled to the
"Clause's" protection. Even further, *Doe* citing to *Gravel v. United States
408 US 606 (1972)*, not only expressly denies the protection of the "Clause"
in cases like this, where criminal activity involving the security of the person
or property of others is involved, but also declines any sort of blanket
deference where the rights of other persons are at stake. See id at 315-316.

The same is true of the defendant's argument that *Harlow* somehow
protects Apostalou, if indeed this Court otherwise finds that the plaintiff has
made out a claim, on the theory that Apostalou cannot be constructively
charged with knowledge that by conspiring and acting to injure Toms in his
employment is somehow not a violation of his rights when it is in retaliation
for his petitioning for redress against public corruption. Judicial notice
could be taken that, since *Harlow*, any public official knows that retaliating
against an employee for reporting public corruption to the GAO or to

Congressional Committees or to the police, or to the news media, is unlawful and actionable. It's only common sense. Apostalou certainly had constructive notice.

Last, but not least, the defendant argues that there is no connection between Apostalou, and her position, that would give rise to plaintiff's proper (and unchallenged) utilization of Rule 8 notice pleading standards. This is plainly not so. Senator Durbin, for whom Apostalou was speaking when she denied plaintiff access to the Senator claiming that he, in effect, didn't want to hear anything from a complainer, sits in crucial positions on the committee's that authorize and appropriate funds for the Architect of the Capitol. As noted inferentially in *Doe* at page 313 when a Member undertakes to influence the legislative process, the activity may not be protected. Apostalou was seeking to prevent the disclosure of public corruption by intimidating and deterring Toms using the power of her boss' (Senator Durbin) over Toms' boss (Hantman) via the appropriation process. There is no greater influence.

### There Is a *Bivens* Remedy and Apostalou Violated Toms' Rights

The second group of arguments made by the defendant Apostalou is that that there is no *Bivens* remedy for Toms First Amendment injuries.

Apostalou essentially argues that this court should extend the *Bush* (*Bush v. Lucas*) doctrine or holding, as it is, to this case. There is no precedent justifying this court to act in the manner suggested by the defendant. If Congress "augmented" Civil Service Reform Act (CSRA) coverage, as defendant claims, it had every opportunity to dovetail, bland or even subsume the CCA into the CSRA. It specifically did not do so. And if the issue is Congress's expression of its specific intentions then it is much more plausible that they intended that an aggrieved employee would have recourse to the courts for constitutional rights violations as opposed to the egregious injustices of the CSRA process, since the CAA was passed in 1995. Instead, a separate appeal process from employer disciplinary grievances was set up which even the former speaker of the House, Newt Gingrich, not known for his "liberal" sentiments, openly complained of and sought to reform because of its procedural due process inequities. See Complaint paragraph 1. In short, as with any other First Amendment violation sounding in either plaintiff's right to petition for a redress of grievances, or to speak out on a matter of public concern, Timothy P. Toms as a public employee, and more importantly as a citizen, has enforceable rights (even under *Garcetti*) which may rank, for as long as it lasts, as one of the most unfortunate Supreme Court decisions in American history.

Apostalou more or less argues, in a shifting, suggestive sort of way, that she was too distant factually from the direct injuries to the plaintiff to be liable for the pain and suffering he experienced, or that she had no power to directly influence decisions made adverse to the plaintiff, or that he did not complain sufficiently. Senator Durbin is one of the two most influential people affecting what Alan Hantman and the inspector general for the AOC do on a daily, weekly, monthly, and yearly basis. He pays the bills. Plaintiff is preparing this humble brief with the assistance of a former member of the U.S. Congress. To naïvely suggest that Ms. Apostalou did not have, and would not have, the power and influence to represent the Senator's views, as she clearly did, does not serve the defendant well. Ms. Apostalou sent a clear message when she conveyed the good senator's views that he did not want to hear evidence of public corruption. In paragraph 9 of the Complaint the plaintiff alleges that through the derogation of his person and work product that plaintiff was prevented from expressing his views, which he plainly did in profusion, to agencies outside his own. By doing so, he, unwittingly, avoided the coming law of *Garcetti*, but also drew the ire of Apostalou and Poole who made no secret of expressing their intention to injure the plaintiff as he appropriately alleges. Apostalou physically intercepted some of the evidence that he sent to Durbin. She later claimed to

speak for him and his denigrating views on the plaintiff's exposure of public corruption.  It remains to be seen whether Senator Durbin actually made the comments or decisions attributed to him by Apostalou.

Wherefore this court is respectfully requested to deny Ms. Apostalou's motion to dismiss and permit discovery to take place.

Respectfully submitted

Timothy P. Toms
Pro-Se