UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY TOMS,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )  Civil Action No. 05-1981 PLF
                                       )
ALAN HANTMAN, the Architect of         )
   the Capitol ("AOC"), et al.,        )
                                       )
            Defendants.                )
_____)

AOC DEFENDANTS' MOTION TO DISMISS AND TO STRIKE OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Alan Hantman, Art McIntye, Amita Poole, Hector Suarez,

Richard Kashurba, and Serena Coleman (the AOC Defendants), hereby

move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss this

action.  In the alternative, the AOC Defendants move for summary

judgment in their favor, pursuant to Fed. R. Civ. P. 56.[1]  The

_____

[1]  To the extent that the Court may rely on matters outside
of the pleadings, the Court may enter summary judgment in favor
of the defendants.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff
should take notice that any factual assertions contained in the
documents in support of this motion may be accepted by the Court
as true unless Plaintiff submits his own affidavit or other
documentary evidence contradicting the assertions in the
documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir.
1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which
provides as follows:

    Supporting and opposing affidavits shall be made on
    personal knowledge, shall set forth such facts as would
    be admissible in evidence, and shall show affirmatively
    that the affiant is competent to testify to the matters
    stated therein.  Sworn or certified copies of all
    papers or parts thereof referred to in an affidavit
    shall be attached thereto or served therewith.  The
    court may permit affidavits to be supplemented or
    opposed by depositions, answers to interrogatories, or
    further affidavits.  When a motion for summary judgment

Court is further asked to strike the fourth sentence of paragraph 18 of the Complaint pursuant to Fed. R. Civ. P. 12(f), because these allegations and speculation about internet pornographic internet sites on a defendant's computer are immaterial, impertinent, and/or scandalous.  The Court is respectfully referred to the accompanying memorandum of points and authorities in support of this motion.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

---

is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
TIMOTHY TOMS,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Civil Action No. 05-1981 PLF
                                 )
ALAN HANTMAN, et al.,            )
                                 )
          Defendants.            )
_____)
```

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiff is a former GS-13 Senior Auditor employee of the Office of the Architect of the Capitol. As alleged in the Complaint, "The gravamen of Mr. Toms' 'Bivens' complaint is that he suffered unlawful retaliation for speaking out on matters of public concern. Mr. Toms was retaliated against for the lawful exercise of his First Amendment rights to speak out as a public employee on matters of public concern free from retaliation therefore, while also suffering a deprivation of his Fourth Amendment rights, and he is [sic] right to procedural due process, in the form of what he believes was a pretextual and unlawful malicious prosecution for no just or proper reason." Complaint at 1-2.

Plaintiff has failed to state a claim for relief and certainly has not stated a claim of a violation of a clearly established constitutional right of which a reasonable person would have known as he must to overcome the defense of immunity.

Moreover, Plaintiff's claims are barred, because the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1302, <u>et seq.</u>, constitutes a special factor, counseling hesitation in the creation of a <u>Bivens</u>[1] remedy.  Moreover, many of Plaintiff's claims are untimely.  Lastly, Plaintiff's delay in bringing this action until the prosecution records and other documentation surrounding his arrest were unavailable warrants application of the latches doctrine, barring his claims.

ARGUMENT

As noted below, Plaintiff has failed to state a claim for relief.  Even if the Court were to conclude that he has stated a claim, the rights upon which he has relied cannot withstand the defense of immunity.

## I.  Special Factors Analysis

The courts have recognized that special factors counseling against the creation of an alternative <u>Bivens</u>-type remedy must be recognized where a comprehensive statutory scheme has been established to provide relief in a given area.  <u>See</u> <u>Mittleman</u> v. <u>U.S. Treasury</u>, 773 F. Supp. 452, 454 (D.D.C. 1991) (Privacy Act bars plaintiff's constitutional claims); <u>Weiss</u> v. <u>International Brotherhood of Electrical Workers</u>, 729 F. Supp. 144, 147 (D.D.C. 1990) (to the extent that plaintiff's emotional injuries were the

---

[1]  <u>See</u> <u>Bivens</u> v. <u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

result of the stressful work situation created by the defendant,
her claim of intentional infliction of emotional distress must be
dismissed as subsumed within Title VII) (and cases cited
therein); Spagnola v. Mathis, 859 F.2d 223, 229-30 (D.C. Cir.
1988) (en banc) (recognizing the exclusivity of the Civil Service
Reform Act's remedies); accord Bush v. Lucas, 462 U.S. 367 (1983)
(comprehensive procedural and substantive provisions of the Civil
Service Reform Act constitute "special factors" counseling
hesitation against a Bivens remedy); Chung v. United States Dep't
of Justice, 333 F.3d 273, 274 (D.C. Cir. 2003) (Privacy Act);
Schweiker v. Chilicky, 487 U.S. 412 (1988) (Social Security
Disability Benefits Reform Act of 1984); Brown v. GSA, 425 U.S.
820 (1976) (Title VII is the sole remedy for federal employees
complaining of job discrimination on account of sex or race);
Gleason v. Malcomb, 718 F.2d 1044, 1048 (11th Cir. 1983) (special
factors counsel against a Bivens remedy where plaintiff could
have sought equitable relief pursuant to the Administrative
Procedure Act ("APA")); Dearsman v. Kurtz, 516 F. Supp. 1255,
1259-60 (D.D.C. 1981) (Civil Service Reform Act ("CSRA") and
Title VII constituted exclusive remedies for adverse actions and
discrimination in the federal workplace, precluding plaintiff's
due process claims); Dotson v. Griesa  398 F.3d 156, 173 (2nd
Cir. 2005) (CAA constituted special factor precluding Bivens
remedy against employees of the judicial branch, given that

-3-

Congress initially considered extending the statute's coverage but decided against such action); Payne v. Meeks, 200 F.Supp.2d 200, 205 (E.D.N.Y. 2002) (the comprehensive statutory scheme established by Congress to govern the rights of congressional employees clearly precludes Payne's Bivens claim for unconstitutional discharge).

In this action, Plaintiff has, himself, admitted that he was afforded one or more administrative hearings. See Complaint at 14-15, ¶¶ 25-27. Although Plaintiff complains that such a hearing was procedurally flawed, see id. at 14, ¶ 26, he cannot escape the fact that Congress has seen fit to afford a limited statutory mechanism, which precludes the creation of a Bivens remedy. See

It is not necessary that the statutory remedial scheme be capable of affording the plaintiff all of the relief he seeks in this action. The controlling factor is that Congress has created a comprehensive scheme. Spagnola v. Mathis, 859 F.2d at 228-30; see Bush v. Lucas, 462 U.S. at 388-90. Thus, special factors counsel against the creation of a Bivens remedy here. Bush v. Lucas, 462 U.S. 367; Payne v. Meeks, 200 F.Supp.2d at 205. Accordingly, Plaintiff's claims against the individual defendants should be dismissed.

-4-

II.  Qualified Immunity and failure To State A Claim

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It is well settled that government officials such as the individual defendants in this case enjoy a qualified immunity from constitutional and statutory claims against them.  See, Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis was explained in Harlow:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  And, a defendant's subjective good faith is not relevant to the qualified immunity analysis, id. at 815-18; rather in making this assessment, the Supreme Court said a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  Conversely, an official is not shielded from liability where he "could be expected to

-5-

know that certain conduct would violate statutory or
constitutional rights." <u>See</u> <u>Farmer</u> v. <u>Moritsugu</u>, 163 F.3d 610,
613 (D.C. Cir. 1998); <u>accord</u> <u>Siegert</u> v. <u>Gilley</u>, 500 U.S. 226,
231-32 (1991) (A necessary concomitant to the determination of
whether the constitutional right asserted by a plaintiff is
"clearly established" at the time the defendant acted is the
determination of whether the plaintiff has asserted a violation
of a constitutional right at all); <u>see also</u> <u>Fernandors</u> v.
<u>District of Columbia</u>  382 F.Supp.2d 63, 70-71 (D.D.C. 2005); <u>see
also</u> <u>Wilson</u> v. <u>Layne</u>, 526 U.S. 603, 609 (1999)(a court performing
a qualified immunity inquiry must first determine whether the
plaintiff has alleged the deprivation of an actual constitutional
right.).

The whole purpose of qualified immunity is to protect public
officials "from the costs associated with the defense of damages
actions" by rooting out meritless lawsuits at the earliest point
possible in the litigation process. <u>Crawford-El</u> v. <u>Britton</u>, 523
U.S. 574, 590 (1998).  As the Supreme Court explained in <u>Davis</u> v.
<u>Scherer</u>, 468 U.S. 183, 197 (1984), "[a] plaintiff who seeks
damages for violation of constitutional or statutory rights may
overcome the defendant official's qualified immunity only by
showing that those rights were clearly established at the time of
the conduct at issue."  Moreover, "[e]ven defendants who violate
constitutional rights enjoy a qualified immunity that protects

-6-

them from liability for damages unless it is further demonstrated
that their conduct was unreasonable under the applicable
standard." Id. at 190.

Thus, in developing the doctrine of qualified immunity, the
Supreme Court has sought to strike a balance "between the
interests in vindication of citizens' constitutional rights and
in public officials' effective performance of their duties."
Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quotation
omitted). Recognizing that "bare allegations of malice should
not suffice to subject government officials either to the costs
of trial or to the burdens of broad-reaching discovery," Harlow,
457 U.S. at 817-18, the Court balanced those competing interests
by establishing a higher threshold for holding public officials
personally liable for constitutional violations. For a public
official to be liable for damages, that official must have
violated a constitutional right, and that right must have been
"clearly established" -- "[t]he contours of the right must be
sufficiently clear that a reasonable official would understand
what he is doing violates that right." Anderson, 483 U.S. at 640.
("qualified immunity protects 'all but the plainly incompetent or
those who knowingly violate the law'") (quoting Malley v. Briggs,
475 U.S. 335, 341 (1986)).

Numerous circuits have placed the burden on plaintiff to
come forward with evidence sufficient to create genuine issue as

to whether defendant's conduct was objectively reasonable in light of clearly established law.  See, e.g., Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992); Washington v. Newsom, 977 F.2d 991 (6th Cir. 1992); Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499 (11th Cir. 1990); Hannon v. Turnage, 892 F.2d 653 (7th Cir. 1990); Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989).  And a court performing a qualified immunity inquiry "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." Wilson v. Layne, 526 U.S. at 609. The Supreme Court has instructed that deciding whether a constitutional right was violated first, rather than asking whether the right was clearly established, "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Id.  The validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639.  At the first stage of the inquiry, "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning." Butera v. District of Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001).

As set forth below, Plaintiff cannot state a claim for relief and certainly not one that can withstand the immunity defense.

-8-

First Amendment Claims

Plaintiff's First Amendment claims are subject to dismissal given the recent Supreme Court holding in Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951 (2006). In Garcetti, the Supreme Court held that when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. Garcetti, 126 S.Ct. at 1959-61. As the Supreme Court recounted in Garcetti:

> Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to "constitutionalize the employee grievance."

Garcetti, 126 S.Ct. at 1959 (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)).

The plaintiff in Garcetti (Richard Ceballos) was a deputy district attorney who as part of his job was asked to review the basis for a search warrant in a case and his review led him to question the same with his superiors and others. Ceballos filed a suit claiming retaliation for the exercise of his First Amendment rights after he was reassigned from the calendar deputy position to a trial deputy position and was denied a promotion.

The Supreme Court held that the first step is to determine whether an employee spoke as a citizen on a matter of public concern and if the answer is no, the employee has no First Amendment cause of action based on the employer's reaction to the

-9-

speech.  If the answer is yes, then the possibility of a First
Amendment claim arises.  <u>Garcetti</u>, 126 S.Ct. at 1958.  The Court
further held that a government entity has broader discretion to
restrict speech when it acts in its role as employer, but the
restrictions it imposes must be directed at speech that has some
potential to affect the entity's operations.  But, the Court held
that the First Amendment does not prohibit managerial discipline
based on an employee's expressions made pursuant to official
responsibilities.  <u>Garcetti</u>, 126 S.Ct. at 1961 ("Proper
application of our precedents thus leads to the conclusion that
the First Amendment does not prohibit managerial discipline based
on an employee's expressions made pursuant to official
responsibilities.").[2]

Plaintiff's allegations clearly denote that he was speaking
as an employee and not as a citizen outside of his employment.
Plaintiff's allegations reveal that all the information he
gathered and was pursuing were the result of his professional
responsibilities in the performance of the duties of his
position.  <u>See</u> Complaint at 4, ¶ 7 ("The plaintiff has a First

_____

[2]  Although <u>Garcetti</u> makes clear that there has been no
First Amendment violation here, those precedents relied on by the
Supreme Court make clear that, even before the <u>Garcetti</u> decision
was announced, the right of a federal employee to rely on the
First Amendment in challenging discipline imposed for doing his
job was not well established.  Thus, qualified immunity would
preclude this action anyway.  <u>See</u> <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S.
at 818.

Amendment right not to suffer retaliation for collecting information, concerning a lawful investigation <u>in conformance with his duties and subsequently reporting evidence</u> of official misconduct and unlawful activities <u>to his superiors</u>. . ."; <u>see also</u> <u>id.</u> at 6-7, ¶ 10 ("The defendant Hantman (the Architect of the Capitol) by and with IG [Inspector General] Art McIntye and Hector Suarez, violated plaintiff's First Amendment rights by acting unlawfully to transfer the plaintiff from his position. . . . Motivated by their desire to cover-up unlawful activities these defendants sought to obstruct and discredit plaintiff's auditing duties. . . . [Defendants acted] <u>simply because plaintiff insisted on performing his job</u> in accordance with the professional standards with which qualified federal auditors such as plaintiff are required to comply.")  (emphasis added).  They acted to constantly badger and harass the plaintiff <u>because he did his job honestly and properly</u>, and they also acted to deter him through intimidation, from seeking investigations of unlawful matters he uncovered <u>in the performance of his duties</u>.") (emphasis added); <u>see also</u> Complaint at 1-2 ("Mr. Toms was retaliated against for the lawful exercise of his First Amendment rights to speak out <u>as a public employee</u>. . .").

    Thus, because Plaintiff was a public employee making statements pursuant to his official duties, he was not speaking as a citizen for First Amendment purposes, and the Constitution

does not insulate his communications from employer discipline.
Garcetti, 126 S.Ct. at 1959-61.   Assuming, arguendo, that
plaintiff's speech can be considered to be that of a citizen, the
present cause of action still fails.  When the interests of the
government are balanced against the plaintiff's speech on matters
he investigated as part of his duties and which different
government entities (Senator Durbin, GAO, Capitol Police) did not
consider merited further action, plaintiff should have not
continued his pursuits which clearly were disruptive due to the
number and persistence of plaintiff's claims and which interfered
with the efficiency and operations of other responsibilities of
government operations.[3]  Plaintiff's First Amendment claims are
therefore subject to dismissal.

### Fourth Amendment Claims

    Plaintiff challenges his arrest in October 2004.  He claims
that Defendant Coleman was upset that Plaintiff wanted an entire
water cooler to himself, when all other employees were being

---

    [3]    Assuming, arguendo, that Plaintiff's speech could be
considered to be that of a citizen, the present cause of action
still fails.  When the interests of the government are balanced
against the Plaintiff's speech on matters he investigated as part
of his duties and which different government entities (Senator
Durbin, GAO, Capitol Police) did not consider merited further
action, see Complaint at 12, ¶ 19, Plaintiff should not have
ignored the contrary conclusions of everyone else and continued
his pursuits to the point of being disruptive due to the number
and persistence of his claims and the resultant interference with
the efficiency and operations of other government operations.

transferred elsewhere and Ms. Coleman wanted the cooler to follow the other employees.  <u>See</u> Complaint at 13, ¶ 20.  Plaintiff asserts on the one hand, that the allegations made by Ms. Coleman "failed to support sufficient probable cause to charge the plaintiff with assault," yet Plaintiff apparently seeks to hold Ms. Coleman liable for his arrest.  <u>See</u> Complaint at 13, ¶ 22.

Plaintiff mentions only one other defendant who allegedly participated in the arrest, Defendant Ravieco.[4]  Plaintiff's Fourth Amendment claim against the other AOC Defendants is, therefore, apparently based on a theory of <u>respondeat</u> <u>superior</u>. <u>See</u> Complaint at 13, ¶ 20 (Defendant Coleman reported Plaintiff to the police, "knowing she had the support of her supervisors who were openly hostile to the plaintiff and undermined him constantly").  Insofar as Plaintiff may be seeking by this to impose liability upon Defendants Hantman, McIntye, Poole, Suarez, or Kashurba on a <u>respondeat</u> <u>superior</u> basis, such a theory has consistently been rejected by the courts for the imposition of <u>Bivens</u> liability.  <u>See</u>, <u>e.g.</u>, <u>Simpkins</u> v. <u>District of Columbia</u>

---

[4]  Plaintiff has yet to serve Defendant Raveico in the nearly ten months since the Complaint was filed.  Plaintiff has suggested that his address was difficult to locate.  <u>See</u> Plaintiff's Renewed Motion For Assistance To Effect Service (Docket No. 12) at 2, ¶ 3.  In fact, the address Plaintiff has identified in the attachment to that motion is an address listed in the second entry found when one conducts a search of the worldwide web using the search engine yahoo.com and searches for "Radu Raveica."  Defendant Raveica will address the bases to dismiss the action against him, if and when necessary.

Government, 108 F.3d 366, 369 (D.C. Cir. 1997) ("Bivens claims cannot rest merely on respondeat superior. . . .  The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."); Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993); Boykin v. District of Columbia, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); Tarpley v. Greene, 684 F.2d 1, 9-11 (D.C. Cir. 1982).

Plaintiff's Fourth Amendment claim against Defendant Coleman also fails.  In this jurisdiction the gist of a complaint for false arrest or false imprisonment is an unlawful detention. Jackson v. District of Columbia, 412 A.2d 948, 954 (D.C. 1980) (citing Marshall v. District of Columbia, 391 A.2d 1374, 1380 (D.C. 1978)).  Plaintiff does not allege that defendant Coleman detained him.  And, even if she were somehow deemed an agent of Officer Revieca for this purpose, Plaintiff does not allege facts to support a Fourth Amendment violation anyway.

> The existence of probable cause is based on an
> objective test: whether a reasonably prudent police
> officer, considering the totality of the circumstances
> confronting him, would be warranted in believing that
> the individual in question committed the offense. Davis
> v. United States, 781 A.2d 729, 734 (D.C. 2001).

Liser v. Smith  254 F.Supp.2d 89, 96 (D.D.C. 2003) (emphasis added).  Plaintiff does not allege that his arrest was without any probable cause, rather, he asserts only "[t]he allegations made by Coleman not only failed to support sufficient probable cause to charge the plaintiff with assault, but in fact,

-14-

supported an opposite conclusion sufficient to charge the defendant Coleman with assault." Complaint at 13, ¶ 22 (emphasis added). The officer, of course, was permitted to consider not just what Defendant Coleman said, but the "totality of the circumstances." Liser, supra, at 96. Those circumstances would have included what the officer observed and what all other witnesses related as well. id., see also Complaint, at 13, ¶ 22 (noting that officer Raveica also received information from people other than Defendant Coleman). See Fernandors v. District of Columbia, 382 F.Supp.2d 63, 71 (D.D.C. 2005) ("A claim for false arrest under the Fourth Amendment may be established upon a showing that there was no probable cause to support a plaintiff's warrantless arrest and detention.")(emphasis added). Because Plaintiff does not allege a lack of any probable cause based on the totality of the circumstances, he has failed to state a claim for a Fourth Amendment violation.

<u>Fifth Amendment Due Process Claims</u>

Plaintiff alleges that the process of conducting administrative hearings for employees like plaintiff are devoid of meaningful due process safeguards, reportedly because "there is no appeal from the process, and the hearing officer (whose report is kept confidential by the OIC and not revealed to plaintiff) produced a report which plaintiff has never seen." Complaint, ¶ 26.

-15-

Plaintiff was provided the procedures and protections found in Defendant's policies regarding discipline, but he claims they were insufficient.  <u>See</u> Complaint at 14, ¶¶ 25-27; AOC Discipline Policy, Chapter 752 (Exhibit A).  Chapter 752 provides that for serious problems such as threats and violence a termination can be appropriate.  <u>Id</u>. at page 752-3.

The first step under Chapter 752 is for an employee to receive a notice from a first line, or higher level, supervisor of a proposed action such as the termination in this case.  <u>See</u> Chapter 752, Appendix B.1.1 and .1.4.  Plaintiff does not dispute that he was provided this notice and that he was given the opportunity to respond to the matters alleged in the notice.  <u>See</u> Complaint at 14, ¶ 25 (defendants "pretextually charg[ed] him through their administrative powers. . .").  The second step is for a higher level supervisor to review the proposal, the response, and other information in the record at that point.  <u>See</u> Chapter 752, Appendix B.1.6.   The third step is for this higher level supervisor to concur or disagree and modify the proposed action.  <u>See</u> Chapter 752, Appendix B.1.6.  The fourth step provides for an employee to request a hearing, and even provide a response, before a third party hearing officer who will hear testimony and other evidence and issue a recommendation.  <u>See</u> Chapter 752, Appendix B.1.7.  Plaintiff does not allege that these procedures were not followed, only that "[t]here is no

appeal from the process, and the hearing officer . . . produced a
report which plaintiff has never seen.")  Complaint at 14, ¶ 26.
Plaintiff requested and was provided this hearing and was
assisted by counsel of plaintiff's choosing and Plaintiff was
given the opportunity to present testimony, documents, and other
witnesses.  The hearing officer's recommendation and other
evidence from the hearing was then forwarded to the Architect of
the Capitol or his designee to make the final decision.  <u>See</u>
Chapter 752, Appendix B.1.8 and .1.9.  This was done and the
final decision was that plaintiff be terminated.  <u>See</u> Complaint
at 14-15, ¶¶ 25-27.

      "The fundamental requirement of due process is the
opportunity to be heard 'at a meaningful time and in a meaningful
manner.'"  <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333 (1976) <u>citing</u>
<u>Armstrong</u> v. <u>Manzo</u>, 380 U.S. 545, 552 (1965) and <u>Grannis</u> v.
<u>Ordin</u>, 234 U.S. 385, 394 (1914).

> As stated in <u>Morrissey</u> v. <u>Brewer</u>, 408 U.S. 471, 481, 92
> S. Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), "it has been
> said so often by this Court and others as not to
> require citation of authority that due process is
> flexible and calls for such procedural protections as
> the particular situation demands."  More precisely, to
> identify the specific dictates of due process, three
> distinct factors must be considered:  "First, the
> private interest that will be affected by the official
> action; second, the risk of erroneous deprivation of
> such interest through the procedure used, and the
> probable value, if any, of additional or substitute
> safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirements would entail."

-17-

<u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333, 96 S. Ct. 893, 903, 47 L.Ed.2d 18 (1976).

<u>Old Dominion Dairy Products, Inc.</u> v. <u>Secretary of Defense</u> 631 F.2d 953, 967 (D.C. Cir. 1980).

Although plaintiff suggests that he enjoyed a property interest in his employment, such a claim was hardly "clearly established" at the time of the events set out in the Complaint. Indeed, even today there is a diversity of views among this Court's Judges as to whether any such property interest exists in employment within the Office of the Architect of the Capitol. <u>Compare</u> <u>Commeree</u> v. <u>Hantman</u>, Civil Action No. 97-0242 (TFH), 1999 WL 1611325 at *5 (D.D.C. Oct. 29, 1999) (Employees within the Office of the Architect of the Capitol are designated by statute to be part of the Excepted Service and are therefore subject to dismissal without cause, prior notice, a termination hearing or an opportunity to appeal), <u>aff'd</u> No. 00-5308, 2001 WL 1610062 (D.C. Cir. Nov. 21, 2001); <u>with</u> <u>Vanover</u> v. <u>Hantman</u>, 77 F. Supp. 2d. 91, 104-108 (D.D.C. 1999) (expressing the contrary view, but recognizing that even if the Architect of the Capitol did not follow all of its promulgated procedures, such does not necessarily mean that there has been a constitutional violation of due process.), <u>aff'd</u> <u>mem</u>. No. 01-5032, 2002 WL 1359630 (D.C. Cir. April 17, 2002).

Regardless of whether plaintiff even had a property interest, Plaintiff can point to no clearly established

-18-

constitutional right which was violated here.  Plaintiff does not
dispute that he received advanced notice of the charges against
him.  See Complaint, at 14, ¶ 25.  He also concedes that he
received a administrative hearing.  Id. at 14, ¶ 26.  He provides
no binding authority for the proposition that all reports
produced must be disclosed or that an appeal must be permitted
beyond those available under the AOC's procedures.  At a minimum,
the question of whether he had a property or liberty interest at
stake and whether the procedures were adequate to satisfy the
minimum necessary anyway were not clearly established in his
favor when the events in the Complaint took place.  Thus, the
defendants would be entitled to qualified immunity.

    Plaintiff asserts that "because defendants' actions were
planned and totally arbitrary meeting the test laid down in
*Sacramento, County of  v. Lewis, 118 S.Ct. 1708 (1988)* and
*Daniels v. Williams*, *474 U.S. 327 (1986)*."  Complaint at 2, ¶ 1.
He complains that he was temporarily detailed, beginning December
2, 2002 and ending by April 2003, that the following day he was
locked out of his office, that his office computer was taken[5] and
certain computer work files were made inaccessible to him or were
destroyed.  Complaint at 11-12, ¶ 18.  Plaintiff asserts that
these actions by defendants McIntye, Hantman and Suarez "indicate

_____

    [5]  Plaintiff concedes that the computer was returned to him
in April 2003, after the temporary detail ended. Complaint, ¶ 18.

-19-

the disparate application of discipline and support the
plaintiff's allegations of substantive due process violations."
Id.  Plaintiff offers no basis to conclude that the taking of a
government computer in an investigation, its dissection or the
seizure of an employee's work papers "shocks the conscience" to
such a degree as to constitute a violation of substantive due
process.  See Complaint at 12, ¶ 18; Butera v. District of
Columbia, 235 F.3d 637, 651 (D.C. Cir. 2001); Briscoe v. Potter,
355 F.Supp.2d 30, 47 (D.D.C. 2004) (substantive due-process
claims dismissed where there was no "pre-existing law" making it
apparent that alleged conduct would violate the Due Process
Clause and defendants therefore entitled to qualified immunity).

    In cases involving due process challenges to executive
action, the threshold question is whether the behavior of the
officials is "so egregious, so outrageous, that it may fairly be
said to shock the contemporary conscience."  Estate of Phillips
v. District of Columbia, 257 F.Supp.2d 69, 77 (D.D.C. 2003)
(quoting County of Sacramento v. Lewis, 523 U.S. at 848 n.8).
None of the facts alleged in Plaintiff's Complaint for his
purported substantive due process violation reaches this
standard, and certainly fails to reach that standard sufficient
to avoid qualified immunity.  See Complaint at 11-12, ¶ 18.
Butera v. District of Columbia, 235 F.3d at 651 (noting that
"[t]his stringent requirement exists to differentiate substantive

-20-

due process, which is intended only to protect against arbitrary government action, from local tort law").

Plaintiff does not meet this stringent standard, and, indeed, does not state a claim under any due process theory, and could not overcome immunity anyway.

III.  Statute of Limitations

Plaintiff claims, in part, that he was the victim of efforts to humiliate and intimidate him, causing plaintiff's auditor work product to be altered to mislead others.  See, e.g., Complaint at 7-9.  These and any other similar allegations constitute, in essence, claims that false allegations about him were published to others.  Defendants submit that the one-year statute of limitations governs Plaintiffs' Bivens claims.

> When a federal action contains no statute of
> limitations, courts will ordinarily look to analogous
> provisions in state law as a source of a federal
> limitations period.  See, e.g., Burnett v. Grattan, 468
> U.S. ----, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984);
> Johnson v. Railway Express Agency, Inc., 421 U.S. 454,
> 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975);
> Brown v. United States, 742 F.2d 1498, 1503 (D.C. Cir.
> 1984) (en banc).  Concluding that "damage to reputation
> ... is central to the [plaintiff's] claim," Opinion at
> 2, the district court applied the District of
> Columbia's one year statute of limitations governing
> defamation actions to Doe's Bivens suit.  See D.C. Code
> § 12-301(4).  The D.C. statute of limitations reads, in
> relevant part: Except as otherwise specifically
> provided by law, actions for the following  purposes
> may not be brought after the expiration of the period
> specified below from the time the right to maintain the
> action accrues:. . .(4) for libel, slander, assault,
> battery, mayhem, wounding, malicious prosecution, false
> arrest or false imprisonment -- 1 year; . . .(8) for
> which a limitation is not otherwise specially

-21-

> prescribed--3 years.  D.C. Code § 12-301.  We agree
> with the district court that the one year limitations
> period should be applied.

<u>Doe</u> v. <u>United States Department of Justice</u>, 753 F.2d 1092, 1114 &

n.28 (D.C. Cir. 1985) (footnote inserted into text).  Here, the

allegedly unlawful action took place as long ago as January 2001.

<u>See</u> Complaint at 8-9.  The Complaint was not filed until October

6, 2005, well beyond the one-year limitations period for these

claims.[6]  <u>See</u>, <u>generally</u>, <u>Thomas</u> v. <u>News World Communications</u>,

681 F. Supp. 55 (D.D.C. 1988) (applying one-year limitations

period to intentional infliction of emotional distress claim

arising out of libel and assault allegations); <u>see also</u> <u>Foretich</u>

---

[6]  Defendants recognize that the Supreme Court has reached a
different conclusion in addressing Section 1983 actions.  <u>See</u>
<u>Wilson</u> v. <u>Garcia</u>, 471 U.S. 261, 271-72 (1985) (applying statutory
construction principles to Section 1983 and concluding that the
personal injury limitations period would presumably apply).  A
<u>Bivens</u> action, however, is not created by statute; and
plaintiffs' claims are most like those described in D.C. Code §
12-301(4).  <u>See</u> <u>Banks</u> v. <u>Chesapeake and Potomac Telephone Co.</u>,
802 F.2d 1416, 1429 (D.C. Cir. 1986) (<u>citing</u> <u>McClam</u> v. <u>Barry</u>, 697
F.2d 366, 372-74 (D.C. Cir. 1983).  Courts in other jurisdictions
have, in defendants' view, incorrectly assumed that the statutory
analysis applied in <u>Wilson</u> should also be applied in the <u>Bivens</u>
context.  <u>See</u> <u>e.g.</u>, <u>Harris</u> v. <u>United States</u>, 422 F.3d 322, 331
(6th Cir. 2005).  To defendants' knowledge this Circuit has not
accepted this invitation to treat <u>Bivens</u> claims as if they are
subject to the statutory analysis applied in <u>Wilson</u>.  <u>Bivens</u>
claims are uniquely creatures of Federal common law, and as such
they cannot and should not be treated uniformly, as contemplated
in <u>Wilson</u>.  Instead, local law has elected to separate common law
claims as subject to differing limitations periods, depending on
the nature of the claim.  This practice should continue to be
followed unless and until the District of Columbia adopts a
separate limitations period for <u>Bivens</u> claims.  <u>See</u> <u>Banks</u> v.
<u>Chesapeake and Potomac Telephone Co.</u>, 802 F.2d at 1429.

v. Glamour, 741 F. Supp. 247 (D.D.C. 1990) (one-year statute of limitation applied to intentional infliction of emotional distress claim arising out of alleged publication of defamatory and false material). Thus, Plaintiff's claims that are similar to claims of libel or slander[7] are subject to dismissal as untimely.

### IV. Latches

In addition, equity will not assist one whose condition is attributable to want of due diligence which may be fairly expected from a reasonable person. Anderson Brothers Corp. v. O'Meara, 306 F.2d 672, 677 (5th Cir. 1962); see Mikulec v. United States, 705 F.2d 599, 602 (2nd Cir. 1983). Rather, equity may be invoked by the vigilant, not those who sleep on their rights. International Union, Allied Industrial Workers of America v. Local Union No. 589, 693 F.2d at 672; TRW Environmental Safety Systems, Inc. v. United States, 16 Cl. Ct. 516, 519 (1989). Laches is the principle that "equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." Russell v. Todd, 309 U.S. 280,

---

[7] If Plaintiff's allegations about his arrest are to be believed, the arrest appears to have taken place on October 8, 2004, which would mean that his false arrest type claim would be timely. As noted below, however, Plaintiff's delay in instituting this action until after his criminal records were expunged, see Complaint, at 13, ¶ 20, means that defendants cannot review those records to assess the timeliness of the action. Thus, laches should bar his arrest-related claims.

287 (1940).  It was developed to promote diligence and accordingly to prevent the enforcement of stale claims.  Powell v. Zuckert, 366 F.2d 634, 636 (1966).  Laches provides a valid defense where two tests are met: the defendant has been prejudiced by delay and that delay was unreasonable.  See American Univ. Park Citizens Ass'n v. Burka, 400 A.2d 737, 740 (D.C. 1979).

Here, Plaintiff waited until after his the prosecution records and other documentation surrounding his arrest were sealed to initiate this action.  See Complaint at 13, ¶ 20.  By delaying as he did to the detriment of Defendants, the doctrine of latches acts as a bar to the claims he now seeks to present.

CONCLUSION

WHEREFORE, the above civil action should be dismissed, or summary judgment entered in favor of the AOC Defendants.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY TOMS,                    )
                                 )
         Plaintiff,              )
                                 )
     v.                          )  Civil Action No. 05-1981 PLF
                                 )
ALAN HANTMAN, the Architect of   )
   the Capitol ("AOC"), et al.,  )
                                 )
         Defendants.             )
_____  )

STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE

         The AOC Defendants hereby provide, pursuant to Local Civ. R.

7(h) and 56, the following statement of facts as to which there

is no genuine dispute.

         1.  Plaintiff was afforded the procedures available for

Architect of the Capitol employees in disciplinary matters at the

Office of the Architect of the Capitol, and as set forth in the

attached Exhibit A.  See Complaint at 14-15, ¶¶ 25-27; AOC

Discipline Policy, Chapter 752 (Exhibit A).

                         Respectfully submitted,


                         _____
                         KENNETH L. WAINSTEIN, DC Bar #451058
                         United States Attorney


                         _____
                         RUDOLPH CONTRERAS, DC Bar #434122
                         Assistant United States Attorney


                         _____
                         W. MARK NEBEKER, DC Bar #396739
                         Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing AOC

Defendants' Motion To Dismiss And To Strike Or, In The

Alternative, For Summary Judgment, supporting memorandum,

statement of facts and a proposed Order has been made by mailing

copies thereof to:

TIMOTHY P. TOMS
4312 Olley Lane
Fairfax, VA  22032

and through the Court's electronic transmission facilities to:

THOMAS E. CABALLERO, ESQ.
Assistant Senate Legal Counsel
Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, DC  20510-7250

on this 31st day of July, 2006.


_____
W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230