## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY TOMS, **Plaintiff** | : : : | **CIVIL ACTIONS AT LAW** <br> **Action No. 05-1981 PLF** |
| **v.** | : : | **RECEIVED** |
| ALAN HANTMAN, the Architect Of The Capitol ("AOC"), et. al., **Defendant** | : : : | AUG 2 9 2006 <br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

### I.    PROCEDURAL AND FACTUAL HISTORY

The plaintiff is employed by the United States federal government as a senior auditor for the Architect of the Capitol. Complaint ¶ 1. Plaintiff became aware of a number of illegal activities that were taking place within the government, including the unlawful obfuscation of his investigation which would reveal illegal activities by federal officials and entities. Complaint ¶ 11. Additionally, the defendants' Poole and Hantman altered his auditor work to mislead the Congress and other responsible entities. Complaint ¶ 11. Plaintiff attempted, as a private citizen who has an interest in the efficient and ethical administration of his government, to report this wrongdoing among other activity that was shocking to him that was taking

place within the government operations to Senator Richard Durbin and other officials. Complaint ¶ 11.

Richard Brown, an employee of the GAO, directed the plaintiff to file a "referral" with the United States Capitol Police" about the information that he knew. Complaint ¶ 13. At the plaintiff's next date of work, he received a transfer by defendant Hantman to a temporary position. Complaint ¶ 16. Plaintiff discovered that he had been locked out of his office and that defendant Kashurba had ordered a computer technician to "dissect" the plaintiff's computer. Complaint ¶¶ 17, 18. The defendants Hantman, the Architect of the Capitol, along with IG Art McIntyre and Hecktor Suarez thereafter engaged in a campaign to intimidate and harass the plaintiff. Complaint ¶ 10. These individuals removed the plaintiff from his office and sent him to work in a trailer with non-potable water. *Id.* Ultimately, with the support of his defendant supervisors, plaintiff was accosted by the defendant Serena Coleman who was upset because plaintiff wanted to keep a water cooler in the trailer. Complaint ¶ 20. Coleman then reported the plaintiff to the USPC where he was falsely charged with assault. Complaint ¶ 23. However, the US Attorney's Office for the District of Columbia declared that they would not prosecute the case because it lacked prosecutorial merit. Complaint ¶ 24. In a final act of harassment and

retaliatory treatment directed at the plaintiff for speaking out on matters of public concern, the plaintiff was terminated from his position. Complaint ¶ 25.

On October 6, 2006, plaintiff brought this complaint pro se' alleging violations of rights that are guaranteed to him by the First, Fourth and Fifth Amendments to the United States Constitution. On July 31, 2006, the AOC Defendants (Alan Hantman, Art McIntye, Amita Poole, Hector Suarez, Richard Kashurba and Serena Coleman) filed a Motion to Dismiss and Strike plaintiff's complaint. This brief is in opposition to the defendant Hantman's Motion to Dismiss.

## II.    ISSUES

A.    Whether the plaintiff has brought a valid claim under Bivens against the defendants?

SUGGESTED ANSWER -- Yes.

B.    Whether the defendants should be denied the defense of qualified immunity?

SUGGESTED ANSWER -- Yes.

C.    Whether the plaintiff has stated a valid claim against the defendants for violation of rights guaranteed to him by First Amendment to the United States Constitution?

SUGGESTED ANSWER -- Yes.

3

D.    Whether the plaintiff's claims should survive the defendant's defenses of statute of limitations and latches?

SUGGESTED ANSWER -- Yes.

## III.    STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. See, *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In deciding a motion to dismiss, the factual allegations of the complaint must be accepted as true. See, *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). The court should look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See, *Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 2 L.Ed.2d 80, 84 (U.S. 1957). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley* at 84.

## IV.    ARGUMENT

A.    **THE PLAINTIFF HAS BROUGHT A VALID CLAIM UNDER *BIVENS* AGAINST THE DEFENDANTS.**

The United States Supreme Court has held that the Constitution itself supports a private cause of action for damages against a federal official. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 1000 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

However, the United States Supreme Court has acknowledged that a *Bivens* action can be defeated in two situations. First, a *Bivens* action will not be allowed to proceed if the Court can discern "no special factors counseling hesitation in the absence of affirmative action by Congress." Second, a *Bivens* claim will be defeated if there is a congressional determination foreclosing the damages claim. Clearly, there is no congressional determination that would foreclose the plaintiff from pursuing violations of rights that are guaranteed to him under the First, Fourth and Fifth Amendments to the United States Constitution. Instead, the defendants argue that a statutory scheme has been established to provide relief to the plaintiff.

5

The defendants claim that the plaintiff was afforded one or more administrative hearings on the claims that he now presents in this litigation. The defendants cite as a basis for there defense that the plaintiff alleges that he had a meeting with the United States Capitol Police and the Architect of the Capitol's Chief Financial Officer as disclosed in his complaint at ¶14 and ¶15. However, these meetings that the defendants cite to were to disclose the criminal activity and unethical behavior that the plaintiff wanted to disclose to Senator Durbin. These meetings did not address the plaintiff's claims for the retaliatory and harassing treatment that the plaintiff received after he reported this activity. These meetings could not have addressed the violations of plaintiff's constitutional rights because the meeting happened **BEFORE** the retaliatory treatment that plaintiff complains of in this action. Therefore, these meetings do not establish that the plaintiff was afforded an alternative remedial scheme to address the harassment that the plaintiff complains of in this case.

The plaintiff was also allowed to attend a meeting at which the hearing officer produced a report that plaintiff had never seen before. Plaintiff was not afforded an opportunity to see the report that was made of the meeting and he was not afforded any process to appeal the decision. The process of allowing plaintiff this administrative hearing was merely a sham.

Further, the meeting merely would address the termination of his position. The administrative hearing is not designed to seek a redress of any grievances for violations of constitutional rights. Accordingly, defendant's motion to dismiss the plaintiff's claims should be denied.

## B.    PLAINTIFF'S CLAIMS SURVIVE THE DEFENDANT'S CLAIM OF THE DEFENSE OF QUALIFIED IMMUNITY.

The defense of qualified immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 287 (1991); *DeBellis v. Kulp*, 166 F.Supp.2d 255, 266 (E.D.Pa. 2001). Qualified immunity shields state officials performing discretionary functions from suit for damages if 'their conduct does not violate clearly established statutory or constitutional rights or which a reasonable person would have know.'" *DeBellis*, supra (quoting *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818, 827 (1999). The United States Supreme Court has articulated a two-part test to determine whether a state official is entitled to the defense of qualified immunity. In *Saucier*, supra, the Supreme Court stated that the initial inquiry is "[t]akin in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 282. If no right would have been violated, then

7

there is no need for the second step. If a right was violated, then the next question to ask is "whether the right was clearly established." *Saucier*, supra. In order to determine whether the right was clearly established the question is if a reasonable officer would have known that his or her conduct violated the right. *DeBellis*, supra (citing *Harlowe v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If these requirements are met, then the officer is not entitled to qualified immunity.

As applied to this case, it is clear that the facts alleged establish that the defendants violated rights that are guaranteed to the plaintiff by the United States Constitution. The First Amendment clearly grants individuals the right to make statements of public concern without fear of retaliation and that this right was established at the time of the violations alleged by the plaintiffs. Further, any reasonable official that is in the defendants' shoes would have known that their actions violated rights that the plaintiff has under the United States Constitution. Therefore, this Court should deny the defendants the defense of qualified immunity.

## C.   PLAINTIFF HAS BROUGHT A VALID FIRST AMENDMENT CLAIM AGAINST DEFENDANTS

The defendants claim that the plaintiff's First Amendment claims are subject to dismissal given the recent Supreme Court holding in *Garcetti v. Ceballos*. In the case of *Garcetti v. Ceballos*, 126 S.Ct. 1951 (U.S. May 30,

2006), the United States Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* The Court in *Garcetti* distinguished between communications that are made as a citizen on a matter of public concern and as an employee. *Id.* The Court identified that when a person makes statements as a public employee, the government has an interest in restricting such speech because as an employer the government has a right to exert control over the employees. *Id.* Defendants, as government employers, are permitted to exercise "a significant degree of control over their employees' words and actions" in order to efficiently provide public services. *Garcetti*, 126 S.Ct. at 1958.

However, there are instances where a government employee makes statements as a citizen and not in his official capacity. These statements are protected under the First Amendment to the United States Constitution. "[T]he First Amendment interests at stake extend beyond the individual speaker. The United States Supreme Court has acknowledged the importance of promoting the public's interest in receiving well-informed views of government employees engaging in civil discussion." *Garcetti* at 1958.

9

This is exactly what Tim Toms did – expressed his well-informed views on a matter of public concern in a civil discussion. The plaintiff realized that there were corrupt activities taking place within the government. As a citizen of the United States, he expressed his opposition to this unlawful and unethical activity and as a result he was harassed and intimidated, assaulted, criminally charged with a crime that he was not guilty of and ultimately terminated from his job. The United States Supreme Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. See, *Garcetti v. Cabellos*, supra. Rather, the First Amendment protects a public employee's right in certain circumstances, to speak as a citizen addressing matters of public concern. See, e.g., *Pickering*, 88 S.Ct. 1731; *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *United States v. Treasury Employees*, 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995).

The plaintiff in *Garcetti* was a deputy district attorney who as part of his job was asked to review the basis for a search warrant. As a result of his review, the plaintiff in *Garcetti* came to the conclusion that there was no basis for the search warrants and issued a report that detailed his findings. After filing the report, the plaintiff was reassigned to a different position and

denied a promotion. The *Garcetti* case is distinctively different from the immediate case. The *Garcetti* court found that the plaintiff in that case (*Caballos*) was acting as an employee at the time that he was making the statements that were on a matter of public concern. *Ceballos*, however, made reports and recommendations within his normal course of business to his superiors. Toms did not convey his statements of public concern through a method that used in his normal course of business. Nor did Toms report the activity to one of his supervisors or anyone within his chain of command. He attempted to talk to a Senator about his concerns, but was unsuccessful at doing so. The United States Supreme Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects.

Plaintiff recognizes that the Supreme Court in *Garcetti* held that the government has an interest in being able to control its employees and in the efficient operations of the government. However, plaintiff's speech was made in an attempt to promote the efficiency of the government. Toms did not do anything that would disrupt the governments operations. His statements of public concern were made outside of his office at work and not to anyone within his office. The operations of the office that he was working in proceeded to work status quo, as if the plaintiff had not

expressed his speech that is protected under the United States Constitution. The only thing that changed was that the plaintiff now began to receive harassing and retaliatory treatment from his superiors.

The plaintiff fully intends to appeal any unfavorable decision that is made by applying the law established in *Garcetti* to the instant case. *Garcetti* is an unfortunate decision that is a step backwards for civil rights and the rights of all citizens of the United States. *Garcetti* protects the rights of the government to discipline any employees who express statements of public concern. However, it is just those employees who are in the position to have the information, knowledge and belief about any corrupt practices that are going on and who can make express opposition to corrupt or unethical practices. After *Garcetti*, government employees who become informed or aware about corrupt practices taking place in their workplace are now faced with the choice to either keep their mouths shut about the corruption or to speak out against the corrupt practices, but know that they will ultimately suffer some sort of harassment and retaliation because that activity is protected under *Garcetti* and masked as employee discipline.

Further, the *Garcetti* opinion is terminally flawed because it specifically holds that "When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer discipline." However, at all times, the defendants in the *Garcetti* case claimed that no discipline was taken against *Ceballos* and all actions that he claimed of were due to legitimate staffing needs. At no time did the defendants claim that they needed to discipline *Ceballo*s, because his memos caused a disruption to the accomplishment of the work that needed done by their office and discipline was necessary in order to maintain the efficient administration of their government office. It was the United States Supreme Court that first used the word "discipline." In this case, it is clear that the actions that were taken by the defendants were meant to intimidate and harass and cannot be construed as discipline. The plaintiff, Tim Toms, was locked out of his office and his employers would not respond to his efforts to contact them. (Complaint ¶17). His work computer was taken and certain documents from his hard drive were either destroyed or missing. *Id.* The nature of the work that he was given to do considerably changed. *Id.* His "office" was moved to a trailer with no water in it. (Complaint ¶20). The plaintiff was the only employee that was moved to the trailer. *Id.* These actions cannot by any stretch of the imagination be interpreted to be employee discipline. Even if the United States Supreme Court wants to give government employers the right to discipline employees who courageously

13

speak out against corruption, there has to be a limit to what actions on the part of government are discipline and what crosses over into harassment. The actions by these defendants are retaliatory actions that fall outside of the protection that *Garcetti* affords to government employers to effect the efficient administration of their offices.    Therefore, this Court should deny the defendants' motion to dismiss plaintiff's First Amendment claims.

**D.    THE PLAINTIFF'S CLAIMS SHOULD SURVIVE THE DEFENSES OF STATUTE OF LIMITAITONS AND LACHES THAT ARE ADVANCED BY THE DEFENDANTS.**

The defendants have raised that the plaintiff should be forbidden from bringing the immediate claims because of the defenses of the statute of limitations and of latches. Courts have uniformly held that a §1983 claim for violations of rights under the First Amendment has a two-year statute of limitations. *Thorpe v. Grillo*, 2003 U.S.App.  LEXIS 22551, *12 (3d Cir. Oct. 31, 2003).   Toms was ultimately dismissed from his position on or about October 2004. This is clearly within the two-year statute of limitations period. Additionally, any actions that happened before that date would also be considered to be timely filed under the continuing violation theory. Under that theory a complaint is timely filed if any act that is part of the continuing violation took place in the statute of limitations. See, *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 206, 2074, 153

14

L.Ed.2d 106 (2002); *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 482

(3d Cir.1997). The defendants' one year statute of limitations defense is a

red herring. This is not a defamation or state tort case.

Finally, the defendants' claim the defense of latches. Latches is

an equitable doctrine which precludes a party from pursuing a complaint

when it is guilty of a lack of diligence in asserting its rights, such that the

passage of time has caused prejudice to the opposing party. *In re Julo,* 564

Pa. 2005, 766 A.2d 335, 338 (Pa.2001). To gain the defense of latches a

defendant must establish that he has been prejudiced by the delay and that

delay was unreasonable. See, *American Univ. Park Citizens Ass'n v. Burka,*

400 A.2d 737, 740 (D.C. 1979). As previously stated, there was no

unreasonable delay in the filing of this complaint. Plaintiff is clearly within

the time allowed for him to file by statute. Accordingly, defendants' claims

of the defenses of statute of limitations and latches should be denied.

### E. FOURTH AMENDMENT

Defendants 4th Amendment argument is somewhat confusing. First,

plaintiff makes his 4th Amendment claims upon the information and belief

alleged in paragraphs 1, 22, and 25. The U.S. Attorneys Office declared the

underlying case "lacking in prosecutorial merit". If plaintiff had beaten up

Coleman, on attractive young women and there was any evidence sufficient

to support the charge they would have proceeded. In this case the presence of probable cause is for the jury. As to Raveica and the other defendants rallying to his aid – he has been served – at his home.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint should be denied.

Respectfully submitted,

By:        Timothy Toms
4312 Olley Lane
Fairfax, VA  22032-1839

## CERTIFICATE OF SERVICE

I, Tim Toms do hereby certify that on this *28th day of August 2006* I

served the following *Brief in Opposition* upon the following attorneys via

First Class Postage Prepaid Mail and Electronic Mailing:

THOMAS E. CABALLERO ESQUIRE
ASSITANT SENATE LEGAL COUNSEL
OFFICE OF SENATE LEGAL COUNSEL
642 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510-7250

W. MARK NEBEKER
ASSISTANT U.S. ATTORNEY
CIVIL DIVISION
555 4TH STREET, N.W.
WASHINGTON, DC 20530

RADU RAVEICA
119 N. E.D.. STREET
WASHINGTON, DC 20515

Respectfully Submitted,

Timothy Toms
4312 Olley Lane
Fairfax, VA 22032-1839

By: