```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

TIMOTHY TOMS,                      )
                                   )
         Plaintiff,                )
                                   )
    v.                             )  Civil Action No. 05-1981 PLF
                                   )
ALAN HANTMAN, the Architect of     )
   the Capitol ("AOC"), et al.,    )
                                   )
         Defendants.               )
_____)
```

REPLY TO PLAINTIFF'S RESPONSE TO
AOC DEFENDANTS' MOTION TO DISMISS AND TO STRIKE OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The Motion To Dismiss

Alan Hantman, Art McIntye, Amita Poole, Hector Suarez, Richard Kashurba, and Serena Coleman (the AOC Defendants), have moved to dismiss this action and alternatively for summary judgment in their favor. Plaintiff has offered no basis upon which to proceed. Indeed, Plaintiff has made no effort to pursue his Due Process claims, and has offered no cases that even he posits would support any violation of a clearly established constitutional right under the Fourth[1] or Fifth amendments. The

---

[1] Plaintiff makes no attempt to support his Fifth Amendment Claims. And, his only attempt to resuscitate his Fourth Amendment claims is his brief is an unsupported argument that because the U.S. Attorney's Office declared the underlying case "lacking in prosecutorial merit" his arrest must have been unlawful. See Plaintiff's Opp. at 15-16. Whether the U.S. Attorney's Office concludes that the prosecution was worth the expenditure of its limited resources on a prosecution is not the issue in the case. What is at issue is whether Plaintiff has alleged facts to support a Fourth Amendment claim that can withstand qualified immunity. As Defendants have pointed out, Plaintiff's allegations fall short of stating a claim, because

Court may treat such abandoned claims as waived. See United States v. Hylton, 294 F.3d 130, 135-36 (D.C. Cir. 2002); Marymount Hosp., Inc. v. Shalala, 19 F.3d 658 (D.C. Cir. 1994); Zolfaghari v. Sheikholeslami, 943 F.2d 451 (4th Cir. 1991).

In any event, Plaintiff concedes that he received an administrative hearing and other opportunities to air his grievances in meetings before his federal employment was terminated. See Plaintiff's Resp. at 5-7.[2] He appears to argue,

---

his allegation is only that some of the circumstances known to the arresting officer (i.e. Defendant Coleman's allegations, see Complaint, ¶ 22) fail to make out probable cause. He makes no effort to explain why probable cause for his arrest could not be properly supported by all of the surrounding circumstances, including what Coleman said as well as what other witnesses said and what the officer actually saw. In any event, none of the AOC Defendants made the arrest. Thus, they could not have committed any Fourth Amendment violation. See Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997) ("Bivens claims cannot rest merely on respondeat superior. . . . The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct.")

[2] In fact, Plaintiff made no effort to address the Statement Of Material Facts As To Which There Is No Genuine Dispute, which is sufficiently brief to reproduce here:

  1) Plaintiff was afforded the procedures available for Architect of the Capitol employees in disciplinary matters at the Office of the Architect of the Capitol, and as set forth in the attached Exhibit A. See Complaint at 14-15, ¶¶ 25-27; AOC Discipline Policy, Chapter 752 (Exhibit A).

To survive summary judgment, the nonmoving party must offer more than mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); he must designate "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Jackson v. Finnegan, Henderson, Farabow, Garrett, 101 F.3d 145, 150-51 (D.C. Cir.

however, that those procedures were insufficient because, some of the meetings predated the defendants' treatment of him.  If what he claims he was entitled to was an opportunity to be heard before his coworkers concluded Plaintiff's conduct would be "considered to be . . . 'insolent behavior,'" see Complaint, ¶ 11, then the opportunity to discuss his views did occur before he was "threatened" or "embarrassed."  See id.  In any event, insofar as Plaintiff might be arguing that his supervisors -- who admittedly viewed him as "insolent" -- committed some unconstitutional act by making him appear to be a poor worker, his claim cannot proceed.  Such a claim is tantamount to a claim that Plaintiff has been slandered.  There is, however, no constitutional right that safeguards one's reputation.  See Siegert v. Gilley, 500 U.S. 226, 234 (1991) ("so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action. ") (emphasis added).

---

1996); United States v. BCCI Holdings, 977 F. Supp. 1, 6 (D.D.C. 1997), aff'd mem., 159 F.3d 637 (D.C. Cir. 1998). Notwithstanding that the Court has warned the Plaintiff in an Order pursuant to Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988), Defendants warned him consistent with Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), and he has been aided at times by an attorney, see September 11, 2006 Motion For An Enlargement Of Time, And Memorandum In Support Thereof, Plaintiff has not addressed the facts identified and supported by Defendants. Accordingly, they should be deemed admitted.  See Local Civ. R. 7(h).

Plaintiff also seems to complain that a more detailed report was not produced to him upon the completion of the hearing and because he was not accorded more appeal rights after the hearing.[3]

Plaintiff seeks to defend his First Amendment claims on two grounds: 1) the Supreme Court wrongly decided Garcetti v.

---

[3] Plaintiff makes his claims regarding the lack of an appeal only in his unsworn opposition. Defendants view this as an allegation that the appeal process ended with the final appeal to the Architect of the Capitol, rather than an assertion that he received no appeal at all. In any event, as noted herein, Plaintiff has offered no basis to challenge the properly supported fact that he was afforded the procedures available to Architect of the Capitol employees as set forth in Chapter 752 of the AOC's Discipline Policy. See Statement Of Material Facts, ¶ 1 and Exhibit A. Those procedures include advanced written notice of the charges, after the charging supervisor has secured assistance from the Human Resources Management Division ("HRMD") in drafting the charges and HRMD's approval of the charges. See Exhibit A, Appendix B. Plaintiff was given the opportunity to respond to the charges both in writing to the employee's second-level supervisor or other designated official (i.e., to the "reviewing official") and to respond orally at a hearing when that reviewing official issued a letter concurring with the proposal to discipline (a "concurrence letter"). Id. The concurrence letter was required to state the reviewing official's concurrence, the problems or incidents for which the action was issued, the right to review the relevant materials, the right to submit a written appeal and request for a formal hearing, and the right for a final decision on the appeal to the Architect based solely on the reasons specified. Id.

Plaintiff's suggestion that he would be entitled to all portions of any report prepared in the matter is unfounded and finds no support in any case Plaintiff has cited. Indeed, if this were so, a litigant would be able to demand to review any bench memorandum or briefing that the Court's law clerk might prepare in any given court case. Such is not the law, and is certainly not so clearly established that the failure to turn over all reports would subject one to Bivens liability in the face of qualified immunity.

Ceballos, ___ U.S. ___, 126 S.Ct. 1951 (2006) and 2) Plaintiff now contends that his attempt to report what he perceived as misconduct to Senator Richard Durbin was done "as a citizen and not in his official capacity." Plaintiff's Opp. at 9-10. The weakness of the first of these arguments is self-evident. See Saunders v. White, 191 F.Supp.2d 95, 100 (D.D.C. 2002) (noting that this Court is bound to follow Supreme Court jurisprudence).

In any event, as Plaintiff recognizes, the allegations in the Complaint are what the Court must consider in assessing a motion to dismiss. Plaintiff's Opp. at 4 ("purpose of a motion to dismiss is to test the sufficiency of a complaint"). Here, the Complaint consistently alleges that the actions taken against Plaintiff were taken for acts he performed as part of his official duties and because he did his job. See Complaint at 1-7 (quoted in Defendant's Mem. at 9-11). Moreover, given the role of Senator Durbin as asserted by the Plaintiff, and the uncertainty before (and after) the Supreme Court's decision in Garcetti, the Defendants could reasonably have believed that the discussion Plaintiff sought to have with Senator Durbin was pursuant to his duties and employment. See, e.g., Plaintiff's Brief In Opposition To Defendant Abostolou's Motion To Dismiss at 5 (Senator Durbin . . . sits in crucial positions on the committee's [sic] that authorize and appropriate funds for the Architect of the Capitol."); id. at 7 ("Senator Durbin is one of

the two most influential people affecting what Alan Hantman and the inspector general for the AOC do on a daily, weekly, monthly and yearly basis.")  Given Plaintiff's admitted links between Senator Durbin and Plaintiff's employer, one can easily see that an employer could easily have viewed Plaintiff's efforts to meet with Senator Durbin as work-related.  As such, even if Plaintiff in hindsight believes his efforts were those of a private citizen, the Defendants would reasonably treat his conduct as work-related and not protected by the First Amendment as outlined in <u>Garcetti</u>.  Of course, when the Defendants are alleged to have acted, the Supreme Court's <u>Garcetti</u> decision had not yet been issued.  This means that at the relevant time, there was even greater uncertainty in the area of First Amendment jurisprudence.  The vagaries of the First Amendment parameters are reflected in the Supreme Court's analysis that predated <u>Garcetti</u>:

> The limited First Amendment interest involved here does not require that Connick tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships.  Myers' discharge therefore did not offend the First Amendment.  We reiterate, however, the caveat we expressed in <u>Pickering</u> [v. <u>Board of Ed. of Township High School Dist. 205</u>, 391 U.S. 563, 569 (1968)]: "Because of the enormous variety of fact situations in which critical statements by . . . public employees may be thought by their superiors . . . to furnish grounds for dismissal, we do not deem it either appropriate or feasible to lay down a general standard against which all such statements may be judged."

<u>Connick</u> v. <u>Myers</u>, 461 U.S. 138, 154 (1983).  Thus, given the legal landscape when the Defendants acted, given the broad

latitude afforded to employers whose employees are exhibiting "insolent behavior," see Complaint, ¶ 11, and given that there was no standard provided by the Supreme Court against which the employer was to gauge whether a given statement by an employee would be afforded First Amendment protection, no clearly established constitutional right was violated.  Particularly here, where Plaintiff never even made his statements to Senator Durbin and thus the exact content of the statement Plaintiff sought to make was unknown, one cannot say that by taking action against Plaintiff the Defendants would have both violated a constitutional right, or that they should have known that their actions would violate a clearly established constitutional right.

    Under these circumstances, the Defendants are entitled to qualified immunity even if, in hindsight, it turns out that Plaintiff's constitutional rights could be deemed violated.  See Wilson v. Layne, 526 U.S. 603, 615-17 (1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"); Anderson v. Creighton, 483 U.S. 635, 640 (1987);  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Saucier v. Katz  533 U.S. 194, 202 (2001).

    Plaintiff makes little effort to defend his claim in the face of the "special factors" analysis proffered by the Defendants.  See Plaintiff's Opp. at 5.  He cites no cases that

counter the numerous authorities relied upon by the Defendants. See id.; Defendants' Mem. at 2-4. Based on these numerous authorities, special factors warrant dismissal of Plaintiff's Bivens claims. Spagnola v. Mathis, 859 F.2d 223, 229-30 (D.C. Cir. 1988) (en banc); Dotson v. Griesa 398 F.3d 156, 173 (2nd Cir. 2005) (CAA constituted special factor precluding Bivens remedy); Payne v. Meeks, 200 F.Supp.2d 200, 205 (E.D.N.Y. 2002).

Plaintiff argues that his claims must survive the defenses of statute of limitations and latches. Plaintiff's Opp. at 14-15. He argues that the proper statute of limitations period is two years and cites as support for this claim the case of Thorpe v. Grillo, 80 Fed.Appx. 215, 220, 2003 WL 22477890, **4 (3rd Cir. 2003). The Thorpe case, however, logically applied Pennsylvania law because the action arose in Pennsylvania. Thorpe, 80 Fed.Appx. at 216. The occurrences in the instant action all allegedly took place in the District of Columbia. Thus, local state law would apply.[4] See Doe v. United States Department of Justice, 753 F.2d 1092, 1114 & n.28 (D.C. Cir. 1985) (affirming

---

[4] The Court in Thorpe also applied the limitations period applicable to a claim under 42 U.S.C. § 1983. The claims in this action against the AOC Defendants is a Bivens action. Indeed, Plaintiff could not pursue a claim under Section 1983 where, as here, the allegations are all against Federal employees who have acted under color of federal law. See 42 U.S.C. § 1983; Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) ("a Bivens case challenges the constitutionality of federal officials' conduct, while § 1983 challenges the constitutionality of state officials' conduct.")

the application by this Court of the local District of Columbia limitations period).[5]

Plaintiff recognizes that latches may bar his claims if he has failed to act without unreasonable delay and the defendant is prejudiced. He makes no effort to challenge the prejudice that Defendants have suffered by being unable to locate and secure prosecution records and other documentation surrounding his arrest, which were sealed at his request before Plaintiff initiated this action. See Complaint at 13, ¶ 20. By delaying as he did to the detriment of Defendants, the doctrine of latches acts as a bar to the claims he now seeks to present. The reasonableness of the delay must be measured in comparison to all of the circumstances. By waiting, Plaintiff knew that the delay might cause the prosecution file to become unavailable in time to assist the defendants in defending against plaintiff's claims. Particularly where he seeks to place so much weight on the prosecutor's decision, he should have filed the instant action in

---

[5] Plaintiff's attempt to describe this case as warranting application of a continuing violation theory is misplaced. Plaintiff relies on Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). That theory has been limited in its application to employment discrimination cases under Title VII. See Brown v. District of Columbia, 251 F.Supp.2d 152, 163 n.5 (D.D.C. 2003). In any event, Plaintiff's termination and the preceding treatment clearly ended on the dates of the discrete events about which he complains. Application of a continuing violation theory would therefore be misplaced. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113-14 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

time to allow all of the records to be examined.  The delay he has caused is, under the circumstances, unreasonable.

<u>The Motion to Strike</u>

Plaintiff has not addressed the motion to strike the immaterial, impertinent, and/or scandalous allegations and speculation about pornographic internet sites on a defendant's computer.  This aspect of the motion should be deemed conceded.  <u>See</u> Local Civ. R. 7(b); <u>Kingman Park Civil Association</u> v. <u>Williams</u>, 348 F.3d 1033, 1039 (D.C. Cir. 2003); <u>Marymount Hosp., Inc.</u> v. <u>Shalala</u>, 19 F.3d 658 (D.C. Cir. 1994).  Thus the fourth sentence of paragraph 18 of the Complaint should be stricken, pursuant to Fed. R. Civ. P. 12(f) and Local Civ. R. 7(b).

For these reasons and those previously set forth, Plaintiff's Complaint should be dismissed or, alternatively, summary judgment should be entered against Plaintiff, and if not dismissed, the portions described above should be stricken.

                        Respectfully submitted,

                        _____
                        KENNETH L. WAINSTEIN, DC Bar #451058
                        United States Attorney

                        _____
                        RUDOLPH CONTRERAS, DC Bar #434122
                        Assistant United States Attorney

                        _____
                        W. MARK NEBEKER, DC Bar #396739
                        Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Reply To Plaintiff's Response To AOC Defendants' Motion To Dismiss And To Strike Or, In The Alternative, For Summary Judgment has been made by mailing copies thereof to:

TIMOTHY P. TOMS
4312 Olley Lane
Fairfax, VA  22032

and through the Court's electronic transmission facilities to:

THOMAS E. CABALLERO, ESQ.
Assistant Senate Legal Counsel
Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, DC  20510-7250

on this 25th day of September, 2006.

```
                              _____
                              W. MARK NEBEKER
                              Assistant United States Attorney
                              555 4th Street, N.W.
                              Civil Division
                              Washington, DC  20530
                              (202) 514-7230
```