UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY P. TOMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1981  (PLF) |
| | ) | |
| ALAN HANTMAN, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

The matter before the Court is the motion of defendants Alan Hantman, Art

McIntyre, Amita Poole, Hector Suarez, Richard Kashurba and Serena Coleman (the "AOC

defendants") to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure, or, in the alternative, for summary judgment under Rule 56(e) of the Federal

Rules of Civil Procedure.[1]  Defendants also move to strike a portion of the complaint on the

grounds that the complaint contains immaterial, impertinent and/or scandalous allegations under

Rule 12(f) of the Federal Rules of Civil Procedure.[2]  Plaintiff Timothy P. Toms brought suit

---

[1]     These defendants refer to themselves as the AOC defendants.  "AOC" is an abbreviation for Architect of the Capitol.

[2]     The papers filed in connection with this motion include Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the alternative, for Summary Judgment ("Mot."); Plaintiff's Response to Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss ("Opp."); and Defendants' Reply to Plaintiff's Response to AOC Defendants' Motion to Dismiss and to Strike or, in the alternative, for Summary Judgment ("Reply").

against eight federal government employees, asserting that they violated his rights under the

First, Fourth and Fifth Amendments to the United States Constitution.[3] Upon consideration of

the parties' arguments, the Court grants the motion to dismiss of the AOC defendants for failure

to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to

plaintiff's First Amendment claims. The Court conludes that these defendants are immune from

suit under the doctrine of qualified immunity with respect to plaintiff's Fifth Amendment claims.

## I. BACKGROUND

Plaintiff Timothy Toms is a senior auditor for the federal government who, during

the course of his employment, became aware of what he perceived as unlawful conduct in the

Architect of the Capitol's Office of Inspector General. See Complaint ("Compl.") ¶¶ 1, 9. Toms

does not specify what this unlawful conduct was, but alleges that when he reported the conduct to

defendant Apostolou, Clerk to the Subcommittee of the Legislative Branch of the Committee on

Appropriations of the United States Senate, and the Capitol Police, he was subjected to

harassment and retaliatory action by seven of the co-defendants, including Alan Hantman, Art

McIntyre, Amita Poole, Hector Suarez, Richard Kashurba and Serena Coleman, all of whom

work for the Architect of the Capitol. See id. ¶¶ 1, 9-13, 16-18, 25, 28.[4]

The alleged retaliatory actions include being assigned to "temporary detail" for

approximately five or six months and then being terminated from his position. See Compl.

---

[3]    The two defendants not addressed in this motion to dismiss are Carrie Apostlou and Radu Raveica. Apostolou and Raveica have each filed a separate motion to dismiss.

[4]    The eighth co-defendant, Raveica, is a Capitol police officer against whom Toms' alleges only Fourth Amendment violations. See Compl. ¶ 28. Raveica is the only defendant against whom plaintiff alleges Fourth Amendment violations. See id.

¶¶ 16, 18, 25. Toms alleges that defendant Poole, Chief of Staff of the Architect of the Capitol,

threatened to retaliate against plaintiff for his "insolent behavior," id. ¶ 11, and took part "in

carrying out the improper goals and purposes of . . . Architect of the US Capitol Alan Hantman,

[and] violated plaintiff's First Amendment rights by . . . acting in staff roles to carry out a

persistent effort to discredit, ridicule, and otherwise unlawfully cooperate with the other

defendants above . . . to discourage, intimidate, and deter" plaintiff from reporting suspected

unlawful activity.  Id. ¶ 9; see also id. ¶ 11 (harassment by Poole and others in the front office

"took the form of threats, dire changes in work conditions, demeaning reassignments and

concerted efforts to embarrass the plaintiff in the eyes and [sic] his colleagues.").

Toms alleges that defendants Alan Hantman, Art McIntyre and Hector Suarez

"violated plaintiff's First Amendment rights by acting unlawfully to transfer the plaintiff from his

position, including a reassignment of duties so that he could not do his job properly."  Compl.

¶ 10. According to the plaintiff, these three defendants subsequently "badger[ed] and harass[ed]"

plaintiff and "retaliated with egregious anti-personnel actions against the plaintiff," including

locking him out of his office, moving him from his office to a trailer and falsely charging him

with a crime and refusing him access to data he needed to do his job.  Id.  ¶¶ 10, 17.  Toms

accuses the AOC defendants of altering his work product.  See id. ¶ 11.

In addition, Toms alleges that defendant Richard Kashurba, Director of

Information Resources Management for the Architect of the Capitol during the relevant time

period, "dissect[ed]" Mr. Toms' computer at the direction of defendant McIntyre.  Compl. ¶ 18.

Toms also makes a statement regarding his suspicions of pornography on defendant Kashurba's

computer, which defendants move to strike under Rule 12(f) of the Federal Rules of Civil

3

Procedure as an immaterial, impertinent and/or scandalous allegation. See id. ¶ 18; Mot. at 1.[5]

With respect to defendant Serena Coleman, Toms alleges that "[o]n October 8, 2004 [he] was accosted in his trailer" by Coleman. Compl. ¶ 20. It appears that Coleman entered Toms' trailer to collect an office water cooler. See id. Toms alleges that Coleman "physically assaulted" him and then reported him to the police. See id. ¶ 21. Toms subsequently was arrested for assaulting Coleman by defendant Raveica, a Capitol Police officer, although the charge was dropped and his record was expunged. See id. ¶¶ 23, 24. Plaintiff's employment was terminated after an administrative hearing and processes, which plaintiff alleges were so insufficient as to violate his Fifth Amendment right to procedural due process. See id. ¶¶ 25-27.

Toms alleges that the defendants violated his First and Fifth Amendment rights under the United States Constitution; he bases his suit on 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983. See Compl. ¶¶ 1, 2. While Congress has not expressly provided for a cause of action for these alleged constitutional violations, Toms asserts that he is entitled to bring suit and recover money damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). See Compl. ¶ 1. The AOC defendants move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure.

---

[5]     Defendants' motion to strike was not mentioned by plaintiff in his opposition papers and therefore is granted as unopposed. See Local Civil Rule 7(b).

## II. DISCUSSION

### *A. Legal Standards*

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume the truth of the facts alleged in the complaint and may grant the motion only if it appears beyond doubt that the complainant will be unable to prove any set of facts that would justify relief. See Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint is construed liberally in plaintiff's favor, and the Court must accept the factual allegations in the complaint as true and grant plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. See Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Andrx Pharms. v. Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001). Nonetheless, the Court need not accept factual inferences suggested by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the complainant's legal conclusions. See Western Associates, Ltd. v. Market Square Associates, 235 F.3d 629, 634 (D.C. Cir. 2001); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d at 1276.

### *B. Plaintiff Has Failed to State a Claim Against the AOC Defendants*
### *for First Amendment Violations*

The Court agrees with defendants that Toms' First Amendment retaliation claim is precluded by Garcetti v. Ceballos, __ U.S. __, 126 S. Ct. 1951 (2006), which held that "when

public employees make statements pursuant to their official duties, the employees are not

speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

communications from employer discipline." Id. at 1960. The complaint itself clearly indicates

that Toms was speaking as a public employee and not as a private citizen. See Compl. ¶ 1

(alleging that plaintiff was retaliated against "for the lawful exercise of his First Amendment

rights to speak out as a public employee"); id. ¶ 7 (stating that the plaintiff collected information

"in conformance with his duties and subsequently report[ed] evidence of official misconduct and

unlawful activities to his superiors"); id. ¶ 10 (alleging plaintiff was retaliated against "simply

because [he] insisted on performing his job in accordance with professional standards with which

qualified auditors such as plaintiff are required to comply").

While disagreeing with the Garcetti decision, plaintiff appears to agree that, at the

very least, it complicates his First Amendment claim, stating:

> After Garcetti, government employees who become informed or
> aware [of] corrupt practices taking place in their workplace are
> now faced with the choice to keep their mouths shut about the
> corruption or to speak out against the corrupt practices, but know
> that they will ultimately suffer some sort of harassment and
> retaliation because that activity is protected under Garcetti and
> masked as employee discipline.

See Opp. at 12; see also id. ("Garcetti is an unfortunate decision that is a step backwards for civil

rights and the rights of all citizens in the United States."). Even if Toms was demoted or

terminated because of statements made pursuant to his official duties, the Supreme Court has

decided that the First Amendment does not shield him from any employer discipline. See

Garcetti v. Ceballos, __ U.S. __, 126 S. Ct. at 1959-60 ("[W]hile the First Amendment invests

public employees with certain rights, it does not empower them to 'constitutionalize the

6

employee grievance.'"). That plaintiff disagrees with the Supreme Court's decision does not affect its application to this case.

### C. Defendants Are Entitled To Qualified Immunity for any Fifth Amendment Violations

Qualified immunity shields state and local officials from personal liability for the exercise of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Butera v. District of Columbia, 235 F.3d 637, 645-46 (D.C. Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Saucier v. Katz, 533 U.S. 194, 201 (2001); Arrington v. United States, 473 F.3d 329, 338-39 (D.C. Cir. 2006); Estate of Phillips v. District of Columbia, 455 F.3d 397, 402 (D.C. Cir. 2006). Analyzing a claim of qualified immunity requires a two-step analysis. First, the Court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). If the plaintiff has alleged such a deprivation, the Court must then inquire whether the right allegedly violated was "clearly established" – that is, whether "'the contours of the right [were] sufficiently clear that a reasonable officer would understand that what he [was] doing violated that right.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (modifications in original).

Toms' Fifth Amendment claims fail on the first prong of the qualified immunity analysis, as he is unable to allege the deprivation of a clearly established constitutional right. See Siegert v. Gilley, 500 U.S. 226, 232 (1991); Butera v. District of Columbia, 235 F.3d at 646.

Toms originally alleged both procedural and substantive due process violations. See Compl. ¶¶

18, 26. In his opposition, however, he addresses only procedural due process. See Opp. at 5-7.

His substantive due process claims therefore have been abandoned. See Local Civil Rule 7(b).[6]

      For an administrative process to be constitutionally adequate, it must include

notice and "some form of hearing." See Logan v. Zimmerman Brush Co., 455 U.S. 422, 434

(1982); see also Vanover v. Hantman, 77 F. Supp. 2d 91, 104 (D.D.C. 1999). Even assuming

that plaintiff had a property interest in his employment with the Architect of the Capitol, a

constitutionally adequate process would have required notice, an explanation of the grounds for

termination and a hearing allowing plaintiff to challenge the grounds of his termination before

being terminated. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985); see

also Ashton v. Civiletti, 613 F.2d 923, 928 (D.C. Cir. 1980); Vanover v. Hantman, 77 F. Supp.

2d at 104. Plaintiff admits that he was afforded an administrative hearing. See Compl. ¶¶ 26-27.

Plaintiff also admits that he had knowledge, and therefore notice, of the charges against him. See

Compl. ¶ 25 ("[T]he defendants . . . charg[ed] him through their administrative powers and then

_____

     [6]    Even if Toms had not abandoned his substantive due process claim, the Court
would have dismissed it. The actions alleged by Toms, even viewed in the light most favorable
to him, could not have risen to the level necessary to support a substantive due process claim.
See Compl. ¶ 18 (stating that the "dissection" of plaintiff's computer and reassignment to a
"temporary detail" "support the plaintiff's allegations of substantive due process violations"). In
order to sufficiently allege a substantive due process violation, the plaintiff must allege conduct
that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary
conscience." Butera v. District of Columbia, 235 F.3d at 651 (quoting County of Sacramento v.
Lewis, 523 U.S. 833, 847 n.8 (1998)). "This stringent requirement exists to differentiate
substantive due process, which is intended only to protect against arbitrary government action,
from local tort law." Id. "[T]he substantive component of the Due Process Clause is violated by
executive action only when it can properly be characterized as arbitrary, or conscience shocking,
in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. at 847 (internal citations
and quotations omitted). Toms' allegations do not meet this high standard.

proceeded to dismiss him from his job . . . ."). In any event, plaintiff does not argue that he

lacked notice or a hearing in which he could contest any charges against him.[7] Instead, plaintiff

claims that he was not afforded due process because "[t]here is no appeal from the process, and

the hearing officer . . . produced a report which plaintiff has never seen." Id. ¶ 26. Neither an

appeals process nor a final report available to the employee are required for constitutionally

adequate procedural due process – plaintiff was entitled to, and received, notice and an

opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546 ("The

tenured public employee is entitled to oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story.").

Plaintiff was afforded procedural due process in this matter. Each of the AOC defendants,

therefore, are entitled to qualified immunity with respect to Tom's Fifth Amendment procedural

due process claims, as he has not stated a claim for a violation of a clearly established

constitutional right.

　　　　　Because the Court concludes that plaintiff fails to state a claim upon which relief

can be granted and that the AOC defendants are entitled to qualified immunity, it is unnecessary

to address the AOC defendants' statute of limitations and doctrine of laches arguments.

---

[7]　　　While not stated in the complaint, defendants state (and plaintiff does not dispute) that plaintiff was assisted by counsel of his choice and was given the opportunity to testify and present documents and witnesses. See Mot. at 17 (citing regulations).

Accordingly, the motion to dismiss filed by the AOC defendants is granted. An

Order consistent with this Memorandum Opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: February 15, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIMOTHY P. TOMS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 05-1981  (PLF) |
| ALAN HANTMAN, *et al.,* | ) ) ) |
| Defendants. | ) ) ) |

## ORDER

_____The Court has before it a motion to dismiss filed by defendants Alan Hantman,

Art McIntyre, Amita Poole, Hector Suarez, Richard Kashurba and Serena Coleman.  For the

reasons stated in the separate Memorandum Opinion issued this same day, it is hereby

ORDERED that the motion [14] to dismiss and to strike or, in the alternative, for

summary judgement filed by defendants Alan Hantman, Art McIntyre, Amita Poole, Hector

Suarez, Richard Kashurba and Serena Coleman is GRANTED; it is

FURTHER ORDERED that with respect to defendants Alan Hantman, Art

McIntyre, Amita Poole, Hector Suarez, Richard Kashurba and Serena Coleman, plaintiff's

complaint is DISMISSED; and it is

FURTHER ORDERED that the fourth sentence of paragraph 18 of the Complaint

is stricken pursuant to Fed. R. Civ. P. 12(f).

SO ORDERED.

                             ___/s/_____
                             PAUL L. FRIEDMAN
                             United States District Judge

DATE: February 15, 2007

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
TIMOTHY P. TOMS,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Civil Action No. 05-1981  (PLF)
                                    )
ALAN HANTMAN, et al.,               )
                                    )
            Defendants.             )
                                    )
```

## MEMORANDUM OPINION

The matter before the Court is the motion of defendant Carrie Apostolou to
dismiss the complaint under the Speech or Debate Clause of the United States Constitution for
failure to state a First Amendment claim under Rule 12(b)(6) of the Federal Rules of Civil
Procedure. She also raises the affirmative defense of qualified immunity. Plaintiff Timothy P.
Toms brought suit against Apostolou and seven other federal government employees, asserting
that they violated his rights under the First, Fourth and Fifth Amendments to the United States
Constitution.[1] Specifically, Toms alleges that Apostolou, Clerk to the Subcommittee on the
Legislative Branch of the Committee on Appropriations of the United States Senate, conspired
with others to take retaliatory action against him and hinder his communication with Senator
Richard Durbin, then Chairman of the Senate Appropriations Committee. See Complaint
("Compl.") ¶ 12. Upon consideration of the parties' arguments, the Court grants the motion to
dismiss of defendant Carrie Apostolou.

---

[1]     The other defendants named are Alan Hantman, Art McIntyre, Amita Poole,
Hector Suarez, Richard Kashurba, Radu Raveica and Serena Coleman.

## I. BACKGROUND

Toms is a senior auditor for the federal government who, during the course of his employment, became aware of what he perceived as unlawful conduct in the Office of the Architect of the Capitol. See Compl. ¶¶ 1, 9. Toms does not specify what this unlawful conduct was, but alleges that when he reported the conduct to Apostolou, Clerk to the Subcommittee on the Legislative Branch of the Committee on Appropriations of the United States Senate, and the Capitol police, he was subjected to harassment and retaliatory action by seven of the co-defendants, including Apostolou. See id. ¶¶ 1, 9-13, 16-18, 25, 28.[2] The retaliatory action that Toms alleges includes being assigned to "temporary detail" for approximately five or six months and then terminated from his position. See id. ¶¶ 16, 18, 25.

Specifically with respect to Apostolou, Toms alleges that she and co-defendant Amita Poole, Chief of Staff for the Architect of the Capitol, "decided to have him retaliated against, setting in motion a number of anti-personnel actions carried out" by two of the other co-defendants. Compl. ¶¶ 9, 11. Toms further alleges that Apostolou and Poole intimidated and injured him, as well as attacked his credibility, to stop him from voicing his concerns about corruption in the Architect's office. See id. ¶ 12. Toms' most specific complaint against Apostolou is that she interfered with his attempts to communicate his concerns about public corruption to Senator Richard Durbin, then Chairman of the Senate Appropriations Committee. See id.

---

[2]    Six of the defendants have jointly filed a separate motion to dismiss. The eighth co-defendant, Raveica, is a Capitol Police officer against whom Toms alleges Fourth Amendment violations. See Compl. ¶ 28. He also has filed a separate motion to dismiss.

2

Toms alleges that Apostolou and the other co-defendants violated his First, Fourth and Fifth Amendment rights under the United States Constitution; he bases his suit on 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983. See Compl. ¶¶ 1, 2. While Congress has not expressly provided for a cause of action for these alleged constitutional violations, Toms asserts he is entitled to bring suit and recover money damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). See id. ¶ 1. Apostolou moves to dismiss Toms' claims against her based on the Speech or Debate Clause of the United States Constitution and Rule 12(b)(6) of the Federal Rules of Civil Procedure. She also relies on the affirmative defense of qualified immunity. See Memorandum of Points and Authorities In Support of Defendant Apostolou's Motion to Dismiss ("Def. Mot.") at 2-3.

## II. DISCUSSION

### A. Speech or Debate Clause

The Court considers Apostolou's Speech or Debate Clause arguments first. See Davis v. Passman, 442 U.S. 228, 236 n.11 (1979) ("Defenses based upon the Clause should thus ordinarily be given priority, since federal legislators should be exempted from litigation if their conduct is in fact protected by the Clause."). The Clause provides that "for any Speech or Debate in either House, they [members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. "The Speech or Debate Clause was designed to assure a co-equal branch of government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch . . . that directly impinge upon or threaten the legislative process." Gravel v. United States, 408 U.S. 606, 616 (1972). It serves to "reinforc[e] the separation of

3

powers designed by the Founders." In re Search of the Rayburn House Office Building Room

Number 2113, 432 F. Supp. 2d 100, 109 (D.D.C. 2006). When it applies, the Speech or Debate

Clause shields Members of Congress not only from liability, but, more broadly, from "the burden

of defending themselves." Dombrowski v. Eastland, 387 U.S. 82, 85 (1967). When it applies, it

is "an absolute privilege." In re Search of the Rayburn House Office Building Room Number

2113, 432 F. Supp. 2d at 109.

> As the D.C. Circuit recently explained, the Clause
>
> > protects acts that are an integral part of the deliberative and
> > communicative processes by which Members participate in
> > committee and House proceedings with respect to the consideration
> > and passage or rejection of proposed legislation or with respect to
> > other matters which the Constitution places within the jurisdiction
> > of either House. And the Clause provides further protection in
> > precluding inquiry into the motivation for acts that occur in the
> > regular course of the legislative process. In defining these
> > categories of protected conduct, the Court has been careful not to
> > extend the privilege beyond its intended scope, its literal language,
> > and its history, to include all things in any way related to the
> > legislative process.

Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 9-10 (D.C. Cir. 2006) (en banc) (internal

quotations and citations omitted) (citing United States v. Brewster, 408 U.S. 501, 512 (1972);

Gravel v. United States, 408 U.S. 606; United States v. Helstocki, 442 U.S. 477, 487-88 (1979);

and United States v. Johnson, 383 U.S. 180 (1966)) (footnotes omitted).[3] "The question to be

resolved is whether the actions of the petitioners fall within the sphere of legitimate legislative

activity. If they do, the petitioners shall not be questioned in any other Place about those

---

[3]     The D.C. Circuit's second most recent opinion regarding the Speech or Debate
Clause was in Boehner v. McDermott, 441 F.3d 1010 (D.C. Cir. 2006). That judgment was
vacated and the case was reheard en banc on January 25, 2007. The opinion has not been issued.

4

activities since the prohibitions of the Speech or Debate Clause are absolute." In re Search of the

Rayburn House Office Building Room Number 2113, 432 F. Supp. 2d at 109 (citing Eastland v.

United States Servicemen's Fund, 421 U.S. 491, 501 (1975)).

      The defendant argues that the Speech or Debate Clause of the United States

Constitution ("the Clause") shields her from litigating the instant action. The Court disagrees.

While the Clause's protection can extend to the staff members of a Senator or Representative, the

staff member's actions are protected only if they are "essential to legislating" and acting as the

legislator's "alter ego." Eastland v. United States Servicemen's Fund, 421 U.S. at 507-08

("Congressmen and their aides are immune from liability for their actions within the legislative

sphere."). The actions of staff members, such as Apostolou, seeking the Clause's protection

while acting as the legislator's alter ego, must meet at least the same standard as required for

legislators themselves. Therefore, unless Apostolou's actions were sufficiently linked to

legislative activity, the Speech or Debate Clause does not shield her from litigation or

(potentially) liability.

      Apostolou's alleged actions in this case – screening or interfering with plaintiff's

communications to Senator Durbin and taking retaliatory action against plaintiff – neither fall

within the "sphere of legitimate legislative activity" nor concern the "passage or rejection of

proposed legislation" or a matter otherwise within the Senate's jurisdiction. Gravel v. United

States, 408 U.S. at 626; see also Eastland v. United States Servicemen's Fund, 421 U.S. at 503.

As the D.C. Circuit has explained, the Clause shields acts such as "authorizing an investigation,

holding hearings, preparing a report, and authorizing the publication and distribution of that

report," but not "activities routinely engaged in by lawmakers, such as constituent services,

5

communications with government agencies, assistance in securing government contracts, and

speeches delivered outside of Congress." United States v. Rose, 28 F.3d 181, 188 (D.C. Cir.

1994) (citing Hutchinson v. Proxmire, 443 U.S. 111, 133 (1979); Doe v. McMillan, 412 U.S.

306, 313 (1973); United States v. Brewster, 408 U.S. at 512; and Gravel v. United States, 408

U.S. at 624-25)). The Court concludes that receiving unsolicited oral communications from a

constituent on behalf of Senator Durbin is a purely administrative, rather than legislative, act and

thus does not fall within the protection of the Speech or Debate Clause.

### B. Plaintiff Has Failed to State a Claim Against Apostolou under Rule 12(b)(6) of the Federal Rules of Civil Procedure

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court

must assume the truth of the facts alleged in the complaint and may grant the motion only if it

appears beyond doubt that the complainant will be unable to prove any set of facts that would

justify relief. See Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Browning v.

Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint is construed liberally in plaintiff's

favor, and the Court must accept the factual allegations in the complaint as true and grant

plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. See

Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997); Kowal v. MCI Communications Corp.,

16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Andrx Pharms. v. Biovail Corp. Int'l, 256 F.3d 799,

805 (D.C. Cir. 2001). Nonetheless, the Court need not accept factual inferences suggested by the

plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the

Court accept the complainant's legal conclusions. See Western Associates, Ltd. v. Market Square

Associates, 235 F.3d 629, 634 (D.C. Cir. 2001); National Treasury Employees Union v. United

6

States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d at
1276.

Toms is seeking damages under Bivens v. Six Unknown Fed. Narcotics Agents,
403 U.S. 388 (1971), for alleged violations of his First, Fourth and Fifth Amendment rights
under the United States Constitution. See Compl. ¶ 1, 2. Toms has failed to state a claim against
Apostolou for those legal claims, as well as any other legal claim that could arise from a liberal
construction of the complaint. As a preliminary matter, the Court notes that Toms' Fourth and
Fifth Amendment claims in fact are directed at the other co-defendants and do not even refer to
Apostolou. See Compl. ¶¶ 1, 17, 18, 22, 23, 25, 26, 28.

### 1. First Amendment Claim

Toms has asserted a claim against Apostolou for violating his First Amendment
rights. See Compl. ¶ 1. For the reasons set forth in the Memorandum Opinion issued in this case
today with respect to the motion to dismiss of the Architect of the Capitol defendants, the Court
concludes that Toms has failed to state a claim for First Amendment violations.

### 2. Other Potential Claims

With Toms' First Amendment claim disposed of, the Court, as it must, liberally
construes the complaint for any other cognizable legal claims against Apostolou. See Kowal v.
MCI Communications Corp., 16 F.3d at 1276. The Court can find none. In all, the complaint
mentions Apostolou twice. See Compl. ¶¶ 9, 12. Plaintiff's only concrete allegation regarding
Apostolou is that "upon information and belief, Ms. Apostolou even interfered with plaintiff's
communications, or attempted communications, to Senator Durbin, in her efforts to suppress the

7

plaintiff's efforts to speak out on matters of public corruption." Id.    ¶ 12. As Clerk to the

Subcommittee on the Legislative Branch of the Senate Committee on Appropriations, of which

Senator Durbin was Chairman, it was Apostolou's job to screen communications to Senator

Durbin. Plaintiff does not state how Apostolou interfered with his attempted communications to

Senator Durbin or whether she did so in any extraordinary manner. Alleging such facts does not

give rise to a cognizable legal claim.

Because the Court holds that plaintiff fails to state a claim upon which relief can

be granted, it is unnecessary to address the defendant's claim to qualified immunity.[4]

Accordingly, the motion to dismiss filed by defendant Carrie Apostolou shall be granted.

An Order consistent with this Memorandum Opinion shall issue this same day.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: February 15, 2007

---

[4]    The Court notes that Toms would also fail to satisfy the first prong of a qualified
immunity analysis – he is unable to sufficiently allege the deprivation of a clearly established
constitutional right. See Siegert v. Gilley, 500 U.S. 226, 232 (1991); Butera v. District of
Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001).

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY P. TOMS,<br><br>       Plaintiff,<br><br>       v.<br><br>ALAN HANTMAN, *et al.*,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-1981  (PLF) |

ORDER

_____The Court has before it a motion to dismiss filed by defendant Carrie Apostolou.

For the reasons stated in the Memorandum Opinion issued this same day, it is hereby

ORDERED that the motion [6] to dismiss filed by defendant Carrie Apostolou is

GRANTED; and it is

FURTHER ORDERED that with respect to defendant Carrie Apostolou,

plaintiff's complaint is DISMISSED.

SO ORDERED.

    ____/s/_____
    PAUL L. FRIEDMAN
    United States District Judge

DATE: February 15, 2007